[Crim. No. 12511.   Second Dist., Div. One.   May 9, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. ORELIUS
MATTHEW STEWART, Defendant and Appellant.

Orelius Matthew Stewart, in pro. per., and Burton I. Rosenberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Phillip G. Samovar, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a judgment of conviction of involuntary manslaughter.

In an information filed in Los Angeles County on December 6, 1965, defendant was charged with murdering George Turner on November 8, 1965, in violation of section 187 of the Penal Code. It was further charged that defendant previously, on May 25, 1954, had been convicted of burglary and had served a term in prison therefor and that on March 29, 1960, he had been convicted of a violation of section 12021 of the Penal Code (Dangerous Weapons Control Law) and had served a term in prison therefor. Defendant pleaded not guilty and denied the prior convictions. At the first call for trial defendant made an added plea of "Not Guilty by Reason of Insanity." A doctor (Doctor Marcus Crahan) was appointed to examine defendant pursuant to the law and was directed to report to the court as to the present mental condition of defendant and as to his mental condition at the time of the commission of the offense.

The plea of "Not Guilty by Reason of Insanity" was withdrawn, a jury trial was waived, and the cause was submitted upon the testimony contained in the transcript of the proceedings had at the preliminary hearing, each side reserving the right to offer additional and further evidence, and, further, it was stipulated that certain other evidence as hereinafter set forth would be received for consideration. The defendant was found guilty of involuntary manslaughter (Pen. Code, § 192, subd. 2) a lesser but necessarily included offense in the charge of murder. Both charged prior convictions were found to be true. A timely notice of appeal was filed.

A résumé of some of the facts is as follows:

Larry Parmenter, on November 8, 1965, at about 9 a.m., was in a drug store on South Broadway in Los Angeles and saw defendant and deceased struggling. Parmenter went to the area of the struggle and grabbed defendant. The deceased was

bowed down, holding his hands to his face, and was bleeding profusely, ". . . like if you had turned a faucet on." Defendant showed a knife to Parmenter. Officer Bielman, of the Los Angeles Police Department, arrived at the scene shortly thereafter and talked with defendant, at which time defendant said, " 'I was standing in front of the drug store when that guy' indicating the victim, 'bumped into me. I followed him into the store and asked him why he bumped into me. He pulled a knife and we started fighting. I got the knife away and cut him in the face with it.' " At no time did Parmenter see a knife in the possession of the deceased.

The record of the doctor's report indicates the following:

"Q: Tell me about this present trouble.

"A: This happened on the spur of the moment really. I was in a drug store on 8th and Broadway. A guy had bumped into me. I turned around, cussed him out, and he pulled a knife on me. During the struggle, I took the knife away from him and stuck him right here (cheek) and just happened to strike an artery and he bled to death. I never saw him before in my life. I got cut right here myself (right hand). He tried to stick me first and I blocked it and got cut myself. This happened so quick, about two or three minutes.

"Q: This happened November what?

"A: November 10th, 9:00 o'clock in the morning. Drug King Drug Store, 8th and Broadway."

The deceased had a folded boy scout knife in his pocket when he was taken to the hospital. Defendant had nine cents in his possession at the time of the arrest.

On November 9, 1965, at about 2:15 p.m., an autopsy was performed on the body of the deceased and from the anatomical findings and pertinent medical history it was determined that the cause of death was a stab wound in the head, a "Stab wound of head transecting left external carotid artery."

No defense was presented.

Appellant now asserts that he was not advised of his constitutional rights, that he was denied due process of law in that he had inadequate counsel, and that he was denied the right to confront the witnesses against him.

■ Appellant contends that his statement made to Officer Bielman was a confession, that he was not advised of his constitutional rights before talking to the officer and, as a consequence, the statement should not have been received into evidence. First of all, the statement is not a confession but

rather an exculpatory statement, designed to raise a defense. In other words, appellant admitted doing the act, stabbing the deceased, but stated that the deceased had attacked him with the knife, that he, appellant, had taken the knife away from deceased and then stabbed him in the face with it. Furthermore, the statement was not the product of an interrogation which was for the purpose of eliciting incriminating statements. In effect, what the police were doing here was asking appellant what had happened. As stated in *People* v. *Cotter*, 63 Cal.2d 386, 393 [46 Cal.Rptr. 622, 405 P.2d 862] : "They were affording him an opportunity which police officers normally and routinely offer to any person whom they are taking into custody to give any explanation of his conduct which he may desire to give. It is a routine means of commencing an investigation." Certainly no accusatory stage in the investigation had been reached. Too, the appellant was not in custody when the complained-of statement was made. "The dangers that *Escobedo* and *Dorado* sought to deter, such as *coercion,* can only take place if a suspect is in custody." (Italics added.) (*Ballard* v. *Superior Court*, 64 Cal.2d 159, 169 [49 Cal.Rptr. 302, 410 P.2d 838].)

Also the record discloses that no objection was made when the statement was introduced into evidence. The rule is clear that ". . . before an appellate tribunal will give consideration to an objection to evidence, the proper ground for its exclusion must have been clearly specified to the trial court [citation]." (*People* v. *Fowzer*, 127 Cal.App.2d 742, 746-747 [274 P.2d 471] ; *People* v. *Robinson*, 62 Cal.2d 889, 894 [44 Cal.Rptr. 762, 402 P.2d 834]. See also *People* v. *Larke*, 246 Cal.App.2d 571 [54 Cal.Rptr. 834] ; *People* v. *Almond*, 239 Cal.App.2d 46, 49-50 [48 Cal.Rptr. 308] ; *People* v. *Sanchez*, 239 Cal.App.2d 51, 55 [48 Cal.Rptr. 424] ; *People* v. *Woods*, 239 Cal.App.2d 697, 704-705 [49 Cal.Rptr. 266] ; *People* v. *Palmer*, 236 Cal.App.2d 645, 650 [46 Cal.Rptr. 499].)

Even if what is stated above were not the case a reversal would not necessarily follow in this case, for it is clear after an examination of the entire record that the evidence of guilt is overwhelming, and beyond any reasonable doubt the admission of the statement into evidence was not prejudicially erroneous. (Cal.Const., art. VI, § 4½.█)

█ Appellant was afforded adequate and proper counsel at every stage in the court proceedings. Counsel showed

considerable diligence and competence in being able to persuade an experienced and learned trial judge to the determination that the appellant warranted only a conviction of involuntary manslaughter. (See *People* v. *Ibarra,* 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487] ; *People* v. *Lugo,* 220 Cal.App.2d 54, 59 [33 Cal.Rptr. 572] ; *People* v. *Adamson,* 34 Cal.2d 320, 333 [210 P.2d 13].)

The public defender here was confronted with an extremely serious situation in which a two-time ex-convict had stabbed a man to death apparently because the man bumped into him while walking along the sidewalk (and it is only the appellant's statement that there was even that much provocation). Further, counsel knew appellant as a graduate of Folsom Prison, as an admitted former user of marijuana and heroin, an admitted user of dexedrine when he worked, an admitted sex deviate, and one who had been in extreme trouble for many, many years and one who when he was in prison had " '. . . put on an act . . . I played crazy . . .' " to get into Vacaville because it ". . . . is the best place to do time . . ." although he was not mentally ill. Trial tactics dictated a very cautious and skilled handling of the case to avoid appellant's being convicted of murder in the first or second degree. The report of the doctor was to the effect that appellant was sane at the time of trial and at the time of the stabbing. The plea of not guilty by reason of insanity very properly was withdrawn.

At the time of trial it was stipulated, in addition to the use of the preliminary transcript, that the following be admitted into evidence: statement of Officer Bielman, a folded boy scout knife which was found in the pocket of the victim when he was taken to the hospital, a statement that appellant had nine cents in his possession when arrested, that defendant was six feet two inches tall, weighed 185 pounds and was 29 years old, the fact that there was a hole in the victim's clothes which lined up with a recent wound in the victim's back depicted in a photograph of deceased, a photograph showing a wound which the victim had received. Further, it was stipulated that the court should read the report of Doctor Crahan, that the court should read and consider the statement of defendant taken November 9, 1965, in the Police Administration Building in which statement defendant, after being advised of his constitutional rights, made an explanation in detail about what had occurred. Also, it was stipulated that a

summary of the victim's clinical record from the Veterans Hospital be received and the criminal identification and investigation records of the deceased, and other photographs of deceased depicting where he suffered a wound in the face, be received. In other words, counsel for defendant was able to get before the judge the defendant's explanation of the episode without defendant's taking the witness stand and undergoing cross-examination. Too, appellant made no objection at the time of trial to any alleged inadequacy of counsel. He cannot ordinarily raise that question for the first time on appeal. (*People* v. *Johnson,* 241 Cal.App.2d 423, 437-438 [50 Cal.Rptr. 598]; *People* v. *Lugo,* 220 Cal.App.2d 54, 59 [33 Cal.Rptr. 572]; *People* v. *Moten,* 207 Cal.App.2d 692, 696 [24 Cal.Rptr. 716]; *People* v. *Monk,* 56 Cal.2d 288, 299 [14 Cal.Rptr. 633, 363 P.2d 865].)

Appellant had the right to cross-examine Officer Bielman had he so desired. His assertion that he did not personally waive his right to cross-examine the witnesses is without merit. In *Wilson* v. *Gray,* 345 F.2d 282, a case which was procedurally similar to the case at bench, the court said: ". . . The district court held that the right of an accused to cross-examine and confront prosecution witnesses in a state criminal trial was guaranteed by the due process clause of the Fourteenth Amendment; that the waiver of this right must be made by the accused personally rather than by his attorney; and that the appellee had not personally waived this right. We agree that the right of an accused to cross-examine and confront prosecution witnesses in a state criminal trial is an essential ingredient of a fair trial. As such it is necessarily a right embodied in the due process clause of the Fourteenth Amendment. [Citations.] But we do not agree that in all cases the waiver of this right must be made by the accused personally rather than by his counsel. It has been consistently held that the accused may waive his right to cross-examination and confrontation and that the waiver of this right may be accomplished by the accused's counsel as a matter of trial tactics or strategy. [Citations.] Here, in the presence of appellee and without any objection on his part, his counsel stipulated that the matter be heard on the transcript of the preliminary hearing, each side retaining the right to produce additional evidence at the trial. The record clearly indicates that under the circumstances of the case as they existed at the time of trial, the decision of appellee's counsel to enter the stipulation was both wise and prudent, a decision deliberately

made as a matter of trial tractics and strategy. We hold that under the circumstances of this case the appellee's right to cross examine and confront prosecution witnesses was effectively waived by his counsel. Nor is this result inconsistent with *Fay* v. *Noia* (1963) 372 U.S. 391 [9 L.Ed.2d 837, 83 S.Ct. 822]. There, the Supreme Court stated the following guidelines for determining whether there has been an effective waiver of a federal constitutional right:

" 'The classic definition of waiver enunciated in *Johnson* v. *Zerbst*, 304 U.S. 458, 464 [82 L.Ed. 1461, 1466, 58 S.Ct. 1019, 1026, 146 A.L.R. 357] . . .—' 'an intentional relinquishment or abandonment of a known right or privilege''—furnishes the controlling standard. If a habeas applicant, after consultation with competent counsel or otherwise, understandingly and knowingly forewent the privilege of seeking to vindicate his federal claims in the state courts, whether for strategic, tactical, or any other reasons that can fairly be described as the deliberate by-passing of state procedures, then it is open to the federal court on habeas to deny him all relief if the state courts refused to entertain his federal claims on the merits— though of course only after the federal court has satisfied itself, by holding a hearing or by some other means, of the facts bearing upon the applicant's default. . . . [Citing authority.] At all events we wish it clearly understood that the standard here put forth depends on the considered choice of the petitioner. . . . [citing authority]. *A choice made by counsel not participated in by the petitioner does not automatically bar relief.'* Id. at 439, 83 S.Ct. at 849. (Emphasis added.) Implicit in this statement is the notion that in the proper circumstances counsel for the accused may effectively waive certain rights of the accused during the course of his representation of the accused and as a matter of trial strategy or tactics. This proposition has consistently been affirmed and applied by this court. [Citations.] Moreover, any doubts regarding the validity of this proposition were erased in the recent case of *Henry* v. *Mississippi*, 379 U.S. 443 [13 L.Ed.2d 408, 85 S.Ct. 564] decided January 18, 1965. There, the Supreme Court stated:

" 'If either [tactical] reason motivated the action of petitioner's counsel, and their plans backfired, *counsel's deliberate choice of strategy* would amount to a waiver binding on petitioner and would preclude him from a decision on the merits of his federal claim either in the state courts or here. Although trial strategy adopted by counsel without prior

consultation with an accused will not, *where the circumstances are exceptional,* preclude the accused from asserting constitutional claims, [citation], we think that the deliberate bypassing by counsel of the contemporaneous objection rule as a part of trial strategy would have that effect in this case.' [Citation.] (Emphasis added). Clearly, the instant case is not one 'where the circumstances are exceptional' so as to preclude the finding of an effective waiver of the right in question of the accused by his counsel. [Citations.]'' (Pages 286-289.)

In late years great stress has been laid upon the right for counsel of defendants in criminal cases. (See *Gideon* v. *Wainwright,* 372 U.S. 335, 344-345 [9 L.Ed.2d 799, 805, 83 S.Ct. 792, 93 A.L.R.2d 733]; *Douglas* v. *California,* 372 U.S. 353 [9 L.Ed.2d 811, 83 S.Ct. 814]; *Powell* v. *Alabama,* 287 U.S. 45, 68-69 [77 L.Ed. 158, 170, 53 S.Ct. 55, 84 A.L.R. 527]; and dozens of other cases.) It would seem to follow that counsel is in charge of the lawsuit, he is the manager so to speak and knows what is required and how to get the best result, working with the facts at hand. (See also *People* v. *Wallin,* 34 Cal.2d 777, 781 [215 P.2d 1]; *People* v. *Andrews,* 234 Cal.App.2d 69, 79 [44 Cal.Rptr. 94]; *People* v. *Francisco,* 228 Cal.App.2d 355, 361 [39 Cal.Rptr. 503]; *People* v. *White,* 180 Cal.App.2d 99, 103 [4 Cal.Rptr. 261]; *People* v. *Torres,* 201 Cal.App.2d 290, 295 [20 Cal.Rptr. 315].)

There can be no question that in this case fundamental fairness was extended to appellant; indeed he is fortunate to have been convicted of the lesser included offense of involuntary manslaughter instead of a greater offense.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied May 19, 1967, and May 31, 1967. Appellant's petition for a hearing by the Supreme Court was denied July 5, 1967.