[Crim. No. 5209. Third Dist. Jan. 14, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
GUY GENE WELLS, Defendant and Appellant.

## COUNSEL

Marvin C. Marx, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Daniel J. Kremer and Thomas W. Kelly, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

JANES, J.—Defendant was tried by jury upon an information charging the crime of burglary (Pen. Code, § 459) and that he, with the intent to inflict such injury, inflicted great bodily injury upon an occupant of the burglarized premises (Pen. Code, § 461, subd. 2).[1] Before commencement of trial, defendant admitted two prior convictions of first degree robbery. From the judgment entered upon a verdict of first degree burglary and the jury's finding that he intended to and actually inflicted great bodily injury upon Mrs. Joan Coulat, the occupant of the premises, defendant prosecutes this appeal, contending (1) that prejudicial error was committed in his identification at a police lineup conducted without the presence of counsel and (2) that the jury instructions were inadequate and the evidence insufficient to support the finding of "great bodily injury."[2]

The victim, Joan Coulat, testified that after a visit with friends she returned to her home between the hours of 9:30 and 10 p.m., turned on some of the lights and the television set and prepared to do some ironing. Within minutes she heard a shuffling noise and walked down the hall to the master bedroom in order to investigate. As she entered the bedroom she saw articles of clothing and other items strewn about the room and observed the defendant standing near a dresser. He immediately hit her on the right temple with

---

[1] All code references herein are to the Penal Code.

[2] Such finding increased defendant's penalty for first degree burglary from imprisonment in the state prison for not less than 5 years to confinement from 15 years to life. (See, § 461, subd. 2, *infra.*)

a heavy object tied in a man's sock and then struck her with a sharp silver-colored object[3] held in his other hand.

Mrs. Coulat backed down the hallway as defendant—laughing continually as he did so—continued to strike her with first one weapon and then the other. Her arm was cut repeatedly by the silverish object as she raised her arm in attempts to shield her face and ward off the attacks. At one point she was able to scratch her attacker; he backed off momentarily and she escaped into the family room to call the police. She told the police a man was in her house and was trying to kill her. While she was speaking to the officer, defendant entered the family room and said, "I'm going to get you now." He came at her once more and again struck her with the hard object in the sock.

When the police arrived four minutes after her call, the telephone was off the hook and Mrs. Coulat was lying unconscious on the floor, scratched and bleeding. A patio door was open about six inches and her assailant had disappeared. She was cut 14 times on her arms and was scarred; her face was scratched, her cheek cut, her head bruised, and she suffered severe headaches for several days. She was taken to the county hospital where X-rays were negative; there she was washed up and Merthiolate was applied.[4]

The defense was alibi. Defendant, the sole witness in his behalf, testified that he was at a North Sacramento bar at the time of the offense; he could not remember the name of the establishment.

*The Lineup*

After Mrs. Coulat regained consciousness she gave the officers a description of her assailant, describing him as tall, crew-cut, heavy-set, Caucasian, and wearing a khaki jacket and trousers. In the days which followed, police detectives visited the Coulat residence to exhibit pictures of parolees in the area and to re-examine the scene. After viewing several hundred pictures, Mrs. Coulat picked out two having features similar to her assailant but made no positive identification. Finally, three days after the burglary, one of the officers showed Mrs. Coulat eight or ten additional pictures, spreading them

---

[3]Two days after the incident, an investigating officer, while re-examining the scene, found a pair of scissors on the bedroom floor. The scissors did not belong to the Coulats, but Mrs. Coulat could not positively identify the scissors as the silverish object used in the attack on her. The police were unable to develop any fingerprints on the scissors.

[4]No photographs of the victim were received in evidence, but at one point she displayed her injuries before the jury and described them:

"Yes. He cut me—I have scars on my arms here. He cut me up here, and I have scars here. I have about twelve here, and then the scars here on my arm. I had bruises on my head, and I had very severe headaches for about three or four days afterwards, and the inside of my cheek was cut."

out at random on her kitchen table, and she selected a photograph of defendant as that of her assailant. She stated, however, that she wished to see the man in the picture "to make absolutely sure." '

That evening the officers conducted a lineup of five participants; the photograph of the five men in lineup order is in evidence. Mrs. Coulat drove her own car to the police station. She "presumed" the man in the photograph would be in the lineup, but she had no conversations with the officers concerning the subjects or the makeup of the lineup. Upon viewing the lineup, she positively identified the defendant as her assailant. At the preliminary examination, and later at trial, she repeated her unequivocal identification.

■ Although the lineup took place after the Supreme Court rulings in *United States* v. *Wade* (1967) 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926], and *Gilbert* v. *California* (1967) 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951], an effective waiver obviates the necessity for the presence of counsel. (*People* v. *Caruso.* (1968) 68 Cal.2d 183, 184 [65 Cal.Rptr. 336, 436 P.2d 336].)

■ The defendant did not have counsel at the lineup in which Mrs. Coulat identified him as her attacker. The record shows, however, that prior to his appearance in the lineup, defendant had been questioned and informed as to the particular burglary under investigation. He was advised also of his right to counsel at the lineup and waived, in writing, his right to such counsel. The written waiver was introduced at trial and was acknowledged by the defendant personally. The record thus demonstrates his intentional relinquishment of a known right and therefore an effective waiver. (*Brookhart* v. *Janis* (1966) 384 U.S. 1, 4 [16 L.Ed.2d 314, 317, 86 S.Ct. 1245]; *Johnson* v. *Zerbst* (1938) 304 U.S. 458, 464 [82 L.Ed. 1461, 1466, 58 S.Ct. 1019].)

Despite the acknowledged waiver of his right to counsel at the lineup, defendant urges that he was entitled to the presence of an attorney to advise him—prior to its execution—as to the significance of the waiver of his right to assistance of lineup counsel. In this connection, he asserts that he did not know the nature and extent of the charges against him until several days after he was arrested, although he was subjected to the lineup and was identified the same day he was arrested. In light of the evidence we have summarized—including the showing that he was informed as to the offense which was under investigation, and that he was interrogated as to his whereabouts at the critical times—all prior to his execution of the waiver and lineup—we reject the invitation thus to enlarge the right to counsel at lineup proceedings.

■ Although not raised in the briefs, we have also considered defendant's challenge to efficacy of the waiver as a charge that his trial counsel erred in stipulating that defendant was advised of his rights and

that the waiver of his right to counsel at the lineup might be received in evidence. However, in the circumstances shown by the record, the clear answer is that the decision was a matter of tactics within the discretion of defense counsel, and since the record shows that counsel was fully aware of the circumstances and nature of the waiver, inadequacy of counsel could not be successfully urged as ground for reversal. (*People* v. *Garrison* (1966) 246 Cal.App.2d 343, 350-351 [54 Cal.Rptr. 731]; *People* v. *Stewart* (1967) 250 Cal.App.2d 829, 835-836 [59 Cal.Rptr. 71]; see also, Note, *Effective Assistance of Counsel For The Indigent Defendant* (1965) 78 Harv.L.Rev., pp. 1442-1445.)

Since the rule of *Wade* and *Gilbert* cannot be invoked because of the effective waiver of counsel, defendant, in order to secure a reversal on the basis of the lineup, must demonstrate that it was conducted with fundamental unfairness and violated due process of law. (*Stovall* v. *Denno* (1967) 388 U.S. 293 [18 L.Ed.2d 1199, 87 S.Ct. 1967]; *People* v. *Caruso, supra,* 68 Cal.2d at p. 184.) At the request of defense counsel, the trial court heard extensive evidence—initially without the jury—on the matter of fairness of the lineup, and viewed a color photograph of the lineup itself. Notwithstanding several claimed inconsistencies in the testimony of Mrs. Coulat and complaint as to the manner in which it was conducted, the court held that it was a fair lineup. A careful examination of the record, with the lineup photograph before us, convinces us that the court could not have reached a contrary conclusion. The lineup was scrupulously conducted and we reject defendant's contention that there was anything suspect about the lineup procedure or the claimed inconsistencies in Mrs. Coulat's identification testimony.

Additionally, as emphasized by the People, the record strongly supports the conclusion that Mrs. Coulat's identification of defendant was not dependent on the lineup itself.

On the night of the attack she gave officers a detailed description of the assailant and thereafter, following her examination of hundreds of photographs of various parolees in the area, she finally selected a picture of defendant under circumstances dispelling any suggestion of direction by the officers or other unfairness. At that point she asked to see the man in the picture before speaking further with the officers. When she appeared to view the lineup, her recognition of the defendant was instantaneous upon her first glimpse of him, before any of the participants were asked to step forward or speak. She had an adequate opportunity to observe defendant for approximately 12 minutes during the assault, her home was well-lighted, and the lineup came only 3 days following the crime. Assuming arguendo, an improperly conducted lineup, the evidence strongly supports a conclusion that her identification of defendant at trial was not induced by

or a product of any impropriety, but rather was based on the independent knowledge secured from her observations of defendant during the course of the assault. (See *Wong Sun* v. *United States* (1963) 371 U.S. 471 [9 L.Ed.2d 441, 83 S.Ct. 407]; *In re Hill* (1969) 71 Cal.2d 997, 1006 [80 Cal.Rptr. 537, 458 P.2d 449].)

### The Finding of "Great Bodily Injury"

■ A question of first impression under the burglary statutes is presented by the jury's express finding that defendant inflicted great bodily injury on Mrs. Coulat.

Penal Code section 460 reads, in pertinent part, as follows: "1. Every burglary of an inhabited dwelling house, . . . or building committed in the nighttime, . . . committed by a person armed with a deadly weapon, or who while in the commission of such burglary arms himself with a deadly weapon, or who while in the commission of such burglary *assaults* any person, is burglary of the first degree." (Italics ours.)

Penal Code section 461 provides the punishment for burglary: "1. Burglary in the first degree: by imprisonment in the state prison for not less than five years.

"2. Burglary in the second degree: by imprisonment in the county jail not exceeding one year or in the state prison for not less than one year or more than 15 years.

"The preceding provisions of this section notwithstanding, in any case in which defendant committed burglary and in the course of commission of the burglary, with the intent to inflict such injury, inflicted *great bodily injury* on any occupant of the premises burglarized, such fact shall be charged in the indictment or information and if found to be true by the jury, upon a jury trial, or if found to be true by the court upon a court trial, or if admitted by the defendant, defendant shall suffer confinement in the state prison from 15 years to life." (Italics ours.)

The paragraph last preceding was added to section 461 by Statutes 1967, chapter 150, section 1. That law had two companion measures, Statutes 1967, chapter 149 (amending Pen. Code, § 213) and chapter 151 (amending Pen. Code, § 264), which similarly extended the minimum sentence for perpetrators of rapes and robberies that result in great bodily harm to the victim. (See Review of Selected 1967 Code Legislation, pp. 146-147.)

Our attention has not been directed to, nor has our own research disclosed any reported cases which consider the effect of the 1967 amend-

ment to section 461, subdivision 2.[5] However, it is clear that the Legislature's intent was to devise three degrees of punishment for burglars: the lightest punishment for perpetrators of second degree burglary; a heavier punishment for perpetrators of first degree burglary, and a heavier punishment still for burglars who intend to and do inflict great bodily injury on the victim.

As we have seen, the present classification of first degree burglary includes a burglary involving an *assault* on any person. Logically, therefore, the 1967 amendment to section 461, subdivision 2 was designed to impose a higher punishment on the perpetrator if he inflicts injuries more serious than those incurred in a simple assault. (See *People* v. *Carroll, supra,* 1 Cal.3d at p. 584.) Had the Legislature intended otherwise, it would have been feasible to delete the portion of Penal Code section 460 which refers to assault on any person and to apply the higher penalty of section 461, subdivision 2 as the only punishment for a first degree burglar who, during the course of the burglary, commits an assault.[6]

■ It is contended by defendant that the evidence is insufficient to support the jury's finding that he inflicted "great bodily injury" upon Mrs. Coulat. Both defendant and the People, in discussing the issue, rely on analogies to cases decided under Penal Code section 245, subdivision (a), which provides, in part, for punishment of one who commits an assault "by any means of force likely to produce great bodily injury." Such decisions, although helpful, are concerned with the use of force *likely to produce* such injury, whereas Penal Code section 461, subdivision 2 patently concerns itself (when the requisite intent is present) with the *resulting injury,* and not the force applied which produced a particular result.

Defendant relies principally upon the case of *People* v. *Fuentes* (1946) 74 Cal.App.2d 737 [169 P.2d 391], for the proposition that unconsciousness, as the result of a fistic blow to the jaw, is not ordinarily considered a "great bodily injury." *Fuentes* was a prosecution under the "force likely to produce great bodily injury" provision of Penal Code section 245.[7]

---

[5](See, however, *People* v. *Carroll* (1970) 1 Cal.3d 581, 584 [83 Cal.Rptr. 176, 463 P.2d 400], and *People* v. *Grigsby* (1969) 275 Cal.App.2d 767, 771-772 [80 Cal.Rptr. 294] (both robbery cases).)

[6]The Legislature could, of course, have spelled out the language of the amendment in terms of "bodily injury," thereby implying a lesser degree of harm. (See, e.g., Pen. Code, § 209 (kidnaping with bodily harm).)

[7]The court in *Fuentes* stated, at page 741: "A blow to the jaw sufficient to knock out the recipient is not unusual in fistic encounters and such a result from one blow is not ordinarily considered a great bodily injury for it is usual for the victim to recover consciousness and the use of his normal faculties within a short time. . . ."

The holding in *Fuentes* has not been cited with approval in later decisions. In *People* v. *Muir* (1966) 244 Cal.App.2d 598, the court stated at page 603 [53 Cal.Rptr. 398]: ". . . [W]e think *People* v. *Fuentes* is and always was out of tune with the law on the crime of assault 'by any means of force likely to produce great bodily injury.' More particularly, we think that the apparent holding of the case, that a blow to the jaw sufficient to knock out the recipient cannot prove such an assault, is wrong."

Despite the seeming contradiction inherent in any attempt to reconcile or equate the holdings in cases decided under section 245 with the language of section 461, subdivision 2 and its companion statutes, any distinction in application of their definitions—as it bears upon the duties of the trier of fact—is more apparent than real.

■ In a prosecution under section 245 for assault "by means of any force likely to produce great bodily injury," the crime defined may be committed without infliction of *any* physical injury, and even though no blow is actually struck. (See *People* v. *Samuels* (1967) 250 Cal.App. 2d 501, 513 [58 Cal.Rptr. 439].) Nevertheless, when the evidence shows that a blow has been struck or a physical injury actually inflicted, the nature and extent of the injury is a relevant and often controlling factor in determining whether the force used was of felonious character. (See, e.g., *People* v. *Muir, supra,* 244 Cal.App.2d at p. 598; *People* v. *Hahn* (1956) 147 Cal.App.2d 308 [305 P.2d 192]; *People* v. *Pullins* (1950) 95 Cal.App.2d 902 [214 P.2d 436]; *People* v. *Schmidt* (1944) 66 Cal. App.2d 253 [152 P.2d 1021]; 1 Witkin, Cal. Crimes (1963) § 272, pp. 255-256.)

As we have pointed out, *Fuentes, Muir* and kindred cases were considering the force applied rather than the resulting injury, since in each case the crime charged was a violation of section 245. It is fundamental, however, that the extent of an injury actually inflicted, as well as the character of the assault, are questions of fact for consideration by the jury. (*People* v. *James* (1955) 133 Cal.App.2d 478 [284 P.2d 527]; *People* v. *Carnavacci* (1953) 119 Cal.App.2d 14 [258 P.2d 1127]; *People* v. *Score* (1941) 48 Cal.App.2d 495 [120 P.2d 62].)

In *People* v. *Score, supra,* 48 Cal.App.2d at page 498 (a § 245 case), the court stated that "[t]he determination of the amount of force necessary to produce great bodily injury is for the jury. The decision of a trial court that the fist of an assailant *did produce such injury* will not

be disturbed on appeal. . . ." (Italics ours.) And in *People* v. *James, supra,* 133 Cal.App.2d 478 (another § 245 case), wherein the victim suffered a black eye, a few loose teeth, bleeding about the face, and was treated for a possible nose fracture, the court stated that the victim had in fact incurred "great bodily injury"—injuries which we deem comparable, if not even less serious than those suffered by Mrs. Coulat, the victim in the case at bench.

We have described at some length defendant's grisly attack on Mrs. Coulat (the character of which leaves no room for doubt as to his intent within the meaning of the statute), the nature of the injuries suffered by her, her resulting unconsciousness, and the numerous scars on her body which were still evident at the time of trial. There is no need for comparison of the extent of her injuries with those of the victims in the numerous cases we have cited (in *Fuentes,* e.g., an injury resulting in unconsciousness from a single blow of the fist). The evidence as to the extent and severity of Mrs. Coulat's injuries was before the jury, as was her person—with its still visible scars. As we have pointed out (see fn. 4, *supra*), no photographs were taken of Mrs. Coulat, and there is nothing in the appellate record from which this court can determine the manner of her scarring or her appearance at trial. We are bound, in such matters, to accept the determination of the trier of fact, and we are persuaded that there was sufficient evidence in the case to support the jury's determination that defendant, with the intent to do so, inflicted great bodily injury upon Mrs. Coulat.[8] (See *People* v. *Grigsby, supra,* 275 Cal. App.2d at pp. 771-772.)

"This court must view the evidence in a light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*People* v. *Sweeney,* 55 Cal.2d 27, 33 [9 Cal.Rptr. 793, 357 P.2d 1049].)

If the circumstances reasonably justify the trial court's findings, reversal is not warranted merely because the circumstances might also be reasonably reconciled with a contrary finding. (*People* v. *Robillard,* 55 Cal.2d 88, 93 [10 Cal.Rptr. 167, 358 P.2d 295, 83 A.L.R.2d 1086];

---

[8]See, involving comparable injuries, *Froedge* v. *State* (1968) 249 Ind. 438 [233 N.E.2d 631] (evidence held sufficient to support a verdict under statute proscribing *infliction* of great bodily harm or disfigurement upon another person) court stated, at p. 636: "*Great bodily harm* defines itself and *means great* as distinguished from *slight, trivial, minor,* or *moderate harm,* and as such *does not include mere bruises as are likely to be inflicted* in a simple assault and battery. . . . Whether the evidence describing such harm or injury is within the meaning of the statute . . . is generally a question of fact for the jury. [Citation.]" (italics in original)); and—under similar statute punishing the *infliction* of great bodily harm—*State* v. *Peters* (1966) 274 Minn. 309 [143 N.W.2d 832].

*People* v. *Love,* 53 Cal.2d 843, 850-851 [3 Cal.Rptr. 665, 350 P.2d 705].) ▇ The test on appeal is whether there is substantial evidence to support the conclusion of the trier of fact; it is not whether guilt is established beyond a reasonable doubt. (*People* v. *Hillery,* 62 Cal.2d 692, 702-703 [44 Cal.Rptr. 30, 401 P.2d 382].)

▇ "Before the judgment of the trial court can be set aside for insufficiency of the evidence to support the verdict of the jury, it must clearly appear that upon no hypothesis whatever is there sufficient substantial evidence to support it. (*People* v. *Daugherty,* 40 Cal.2d 876, 885 [256 P.2d 911].). . . ." (*People* v. *Redmond* (1969) 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321].)

▇ Defendant's remaining complaint is that the jury was not properly instructed on the definition of "great bodily injury" within the meaning of section 461, subdivision 2. During the course of regular instruction the court—in addition to other necessary instructions, including those on burglary—instructed on the 1967 amendment at issue, in the form of instruction set out in the margin.[9] Defendant requested no instruction of his own on the issue and made no request for modification or expansion of the instruction. During the course of its deliberation, the jury requested additional instruction on the definition of "great bodily injury" and the trial judge further instructed the jury that "great bodily injury" as that term was used under the law in this case, "refers to significant or substantial bodily injury or damage; it does not refer to trivial or insignificant injury."

The instructions as supplemented provided the jury with adequate guidelines. By stating that trivial or insignificant injuries would not fall within the purview of the statute, they gave the jury a basis for determining whether the injuries received by Mrs. Coulat were "great" as provided in section 461, subdivision 2. The jurors were thereby told that to come within the meaning of the statute the victim's injuries must be found "significant or substantial." No better or different definition of the statutory term was suggested by the defendant, and the terms used by the court properly con-

---

[9]"It is charged in the information that in the course of the commission of the burglary therein described, the defendant, with the intent. to inflict such injury, did inflict great bodily injury upon JOAN COULAT, an occupant of the premises described in that information.

"If you find the defendant guilty of the crime charged in the information, it then becomes your duty to determine whether or not the defendant, with specific intent to inflict such injury, did inflict great bodily injury on JOAN COULAT when she was an occupant of the burglarized premises, and you will include a finding on that question in your verdict, using a form that will be provided for that purpose."

note the relevant severity of injury prerequisite to a finding under the statute. (See fn. 8, *supra.*)

The judgment is affirmed.

Friedman, Acting P. J., and Regan, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 9, 1971.