[Crim. No. 23894. Second Dist., Div. Three. Jan. 23, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
GARY DEAN SINCLAIR, Defendant and Appellant.

892

COUNSEL

Robert G. Eckhoff, Public Defender, and Lonnie B. Springer, Jr., Deputy Public Defender, for Defendant and Appellant.

David D. Minier, District Attorney, for Plaintiff and Respondent.

## Opinion

**LORING, J.**\*—By information No. 98094 filed December 29, 1972, defendant, Gary Dean Sinclair, was charged in count I with a violation of Penal Code section 459 (burglary) in that on November 29, 1972, he did feloniously enter the residence of Charles C. Butler, located at 261 Pebble Hill Drive, Santa Barbara County, with intent to inflict great bodily injury, and that he did inflict great bodily injury upon Joseph Ristagno, a person occupying said building. Count II charged a violation of Penal Code section 459 (burglary) on November 29, 1972, in that defendant Sinclair did feloniously enter a residence occupied by Lorne Carlson at 244 Pebble Hill Place with intent to commit theft; count III charged a violation of Penal Code section 245, subdivision (b) (assault on police officer with deadly weapon while in the performance of duty) on November 29, 1972, in that defendant Sinclair did feloniously commit an assault with a deadly weapon on Joseph Ristagno, a peace officer, who was engaged, and defendant knew he was engaged, in the performance of his duties. The information also charged two prior convictions, one a violation of Penal Code section 470 (forgery and counterfeiting), judgment pronounced August 1, 1972, and a second violation of Penal Code section 470, a judgment pronounced June 22, 1971. On January 2, 1973, defendant waived arraignment and pleaded "not guilty" and denied the two priors. Information No. 98095 was consolidated with information No. 98094. Trial was set for January 31, 1973. On January 31, 1973, defendant entered an additional plea of "not guilty by reason of insanity." Two doctors were appointed by the court under Penal Code sections 1026 and 1027 to determine defendant's sanity. On February 14, 1973, defendant (the court having found that defendant was fully advised of his rights) withdrew his plea of "not guilty" and "not guilty by reason of insanity" and pleaded "guilty" to counts I and II and admitted the two priors, on the express condition that the court determine after trial and the introduction of evidence, whether or not Deputy Ristagno was an "occupant" of the Butler residence within the meaning of Penal Code section 461 on count I, and that the court determine after trial and the introduction of evidence, the degree of burglary under count II. Count III and information No. 98095 were dismissed. After hearing evidence and argument on February 15 and 16, 1973, the matter was submitted, and on March 2, 1973, the court rendered an oral opinion, confirmed by written opinion, in which the court found that Officer Ristagno was an "occupant" of the Butler residence within the meaning of Penal Code section 461, and that the burglary alleged in count II was burglary in the first degree in

---

\*Assigned by the Chairman of the Judicial Council.

that at the time of its commission defendant was armed with a deadly weapon. On March 26, 1973, the court denied the defendant's application for probation and sentenced him to state prison on counts I and II for the term prescribed by law, the terms to run concurrently. In a statement by the judge and district attorney under Penal Code section 1203.01 the "weapon" was described as a "knife with fixed 4″ blade used to stab deputy sheriff attempting to apprehend defendant." The court recommended against early parole.[1] Defendant appeals from the judgment.

CONTENTIONS

Appellant contends:

1. Deputy Ristagno was not an "occupant" of the Butler residence within the meaning of Penal Code section 461.

2. The evidence was insufficient to establish beyond a reasonable doubt that defendant was, at the time of the burglary of the Carlson residence, armed with a deadly weapon within the meaning of Penal Code section 460.

FACTS

We are here concerned with the burglary of two residences located in close proximity to each other which occurred within an hour and a half of each other on November 29, 1972. The first was the burglary of the residence of Lorne Carlson, located at 224 Pebble Hill Place, which occurred after 8:45 a.m., and prior to 10:24 a.m., and a burglary at the residence of Charles C. Butler, located at 261 Pebble Hill Drive, which was in progress at 10:28 a.m. on that date when Deputy Ristagno arrived on the scene.

Deputy Sheriff Joseph R. Ristagno testified that at 10:24 a.m., November 29, 1972, he received a radio call from the sheriff's dispatcher that a burglary was in progress at 261 Pebble Hill Drive (Butler residence). The events were reenacted in court with various officers playing different roles, under the direction and supervision of Officer Ristagno, and a video tape record was made, which was played to the court. In essence, Ristagno, in

---

[1] "VIEWS AND RECOMMENDATIONS:

"Defendant stands convicted of first degree burglary with great bodily injury. The fact that his victim was a uniformed Deputy Sheriff should, in my opinion, preclude any possibility of early parole. Defendant stabbed Deputy Joseph Ristagno twice in the side and abdomen; Ristagno was on the critical list at first, and was confined to the hospital for ten days. It is my understanding that one wound would have been fatal if differently located by less than an inch. In my opinion, no crime flies against the concept of an ordered society more than a deadly attack upon a peace officer. A long period of incarceration is recommended."

uniform, went to the Butler residence, saw the back door ajar, drew his gun, entered, saw defendant and ordered him to "freeze." Defendant broke for the front door, Ristagno holstered his weapon and set out in pursuit. They struggled at the front door, defendant drew a knife, stabbed Ristagno, the struggle continued, Ristagno drew his weapon, it jammed, he saw blood on the knife, knew he had been stabbed in the midsection, tried to fire the gun, and defendant stabbed him a second time on the left side. Ristagno seized his left side with his right hand; defendant fled out the back door. Ristagno pursued him but finally gave up the chase because of the wounds. Early that afternoon, defendant was arrested in a creek bed nearby. A short time later, a leather knife sheath and belt affixed were found nearby. On December 8, 1972, a knife was found in an ivy bed at a location between the residence and the creek bed where defendant was arrested. There was dried human blood on the knife. It was identified by Ristagno as similar to the one with which defendant had stabbed him. The knife fit the sheath exactly.

Loralee Carlson testified that she resided in the Carlson residence at 224 Pebble Hill Place; that she left home about 8:45 a.m., November 29, 1972, leaving the house empty and returned about 3:30 p.m. In the intervening time a burglary was committed, to which defendant pleaded "guilty." At both residences plastic was found in the yard, of the type used by burglars to open locked doors.

### Discussion

Defendant contends that the word "occupant" as used in Penal Code section 461[2] has a special meaning which includes some kind of a possessory right, but in any event does not include persons in the position of Ristagno who was present only temporarily while in the performance of his official duties.

In *County of Contra Costa* v. *East Bay Municipal Util. Dist.*, 229 Cal. App.2d 556 [40 Cal.Rptr. 495], the court said at page 564: "It is the

---

[2]Penal Code section 461 reads as follows: "Burglary is punishable as follows: 1. Burglary in the first degree: by imprisonment in the state prison for not less than five years. 2. Burglary in the second degree: by imprisonment in the county jail not exceeding one year or in the state prison for not less than one year or more than 15 years. The preceding provisions of this section notwithstanding, in any case in which defendant committed burglary and in the course of commission of the burglary, with the intent to inflict such injury, inflicted great bodily injury on any occupant of the premises burglarized, such fact shall be charged in the indictment or information and if found to be true by the jury, upon a jury trial, or if found to be true by the court, upon a court trial, or if admitted by the defendant, defendant shall suffer confinement in the state prison from 15 years to life."

established rule that words in a statute should be given their ordinary meaning and receive a sensible construction in accordance with the commonly understood meaning thereof, except when clearly otherwise intended or indicated. [Citations.] It is also the rule that where a word of common usage has more than one meaning, the meaning which will best attain the purpose of the statute should be adopted, even though the ordinary meaning of the word is thereby enlarged or restricted."

In *People* v. *Asamoto,* 131 Cal.App.2d 22, at page 29 [279 P.2d 1010] (quoted with approval in *People* ex rel. *S. F. Bay etc. Com.* v. *Town of Emeryville,* 69 Cal.2d 533, 543-544 [72 Cal.Rptr. 790, 446 P.2d 790]) the court said: "It is fundamental that the objective sought to be achieved by a statute as well as the evil to be prevented is of prime consideration in its interpretation, and where a word of common usage has more than one meaning, the one which will best attain the purposes of the statute should be adopted, even though the ordinary meaning of the word is thereby enlarged or restricted and especially in order to *avoid absurdity or to prevent injustice.*" (Italics in original.)

*People* v. *Wells,* 14 Cal.App.3d 348 [92 Cal.Rptr. 191], is cited and relied upon by both plaintiff and defendant since it is one of the few cases which construes section 461 since the 1967 amendment adding the last paragraph. At pages 356 and 357 the court said: "The paragraph last preceding was added to section 461 by Statutes 1967, chapter 150, section 1. That law had two companion measures, Statutes 1967, chapter 149 (amending Pen. Code, § 213) and chapter 151 (amending Pen. Code, § 264), which similarly extended the minimum sentence for perpetrators of rapes and robberies that result in great bodily harm to the victim. (See Review of Selected 1967 Code Legislation, pp. 146-147.) [¶] Our attention has not been directed to, nor has our own research disclosed any reported cases which consider the effect of the 1967 amendment to section 461, subdivision 2. However, it is clear that the Legislature's intent was to devise three degrees of punishment for burglars: the lightest punishment for perpetrators of second degree burglary; a heavier punishment for perpetrators of first degree burglary, and a heavier punishment still for burglars who intend to and do inflict great bodily injury on the victim." (Fn. omitted.)

Appellant stresses the use of the word "victim" by the court in the *Wells* case. He assumes that the word "victim" of the burglary and "victim" of the "great bodily injury" mean one and the same person. In *Wells,* the "victim" of the burglary and the "victim" of the "great bodily injury" were in fact one and the same person—Mrs. Joan Coulat, the owner of the residence who was brutally assaulted during the course of a burglary. How-

ever, there is nothing whatsoever in the opinion in *Wells* to indicate that the court had in mind a situation such as the case at bar in which a burglary might be committed in the course of which a person other than the owner of the property might be the victim of the "great bodily injury." There is nothing in *Wells* which excludes the possibility of a crime within the meaning of Penal Code section 461, being inflicted with great bodily injury in the course of a burglary, where the great bodily injury is inflicted on a person other than the owner of the property. If we were to adopt the contention of defendant as a correct statement of law, it would mean that if a burglar burglarized a rented residence while the landlord, tenant, next-door neighbor, and a television repairman making a television repair, were present and the burglar inflicted "great bodily injury" on only one of those four persons, the amount of the punishment would depend upon the status of the person on whom he inflicted the "great bodily injury." Under appellant's argument, if the burglar inflicted the "great bodily injury" on the tenant, it would subject him to the penalty imposed by Penal Code section 461 because the tenant had some kind of a possessory interest in the premises and was therefore "an occupant" but if the burglar inflicted the "great bodily injury" upon the landlord, neighbor, or the television repairman, he would not be subject to the penalties of Penal Code section 461 because since the landlord, neighbor, and television repairman had no possessory right in the premises, they would not be "an occupant" and, hence, not within the scope of Penal Code section 461. Such an interpretation would be absurd and would result in an injustice, and is therefore contrary to established rules of statutory construction. It is clearly not the result intended by the Legislature. ■ In our opinion the evil which the Legislature intended to reach by the 1967 amendment of Penal Code section 461 was the evil of inflicting "great bodily injury" on human beings during the course of a burglary and the word "occupant" was intended to refer to any human being who was present within the "premises burglarized," i.e., the structure, even though temporarily there, as distinguished from someone who might be on the real property, but outside the structure. In our opinion the word "occupant" was not intended to distinguish between people who held some type of legal possessory interest and those who did not. With reference to the term "occupant" 67 Corpus Juris Secundum, Occasion-Occasional, at page 73 states: "OCCUPANT. A term not always susceptible of precise definition, its meaning varying according to the context, the idea intended to be conveyed being gathered from a consideration of the purpose of the constitutional or statutory provisions in which the term is used, as well as from the ordinary definitions given by lexicographers. The term is defined as meaning one who occupies, or takes possession . . . ."

Although not directly in point, *People* v. *Ines,* 90 Cal.App.2d 495 [203 P.2d 540], does shed some light on our problem. In *Ines* defendant was found present on premises where bets were being taken. He was charged with and found guilty of a violation of Penal Code section 337a, subdivision 2, which denounces the "keeping or occupancy" of any room for registering bets. The court affirmed judgment of conviction, although there was no evidence that defendant was the owner, lessee, or employee upon the premises, it being sufficient that he was found to be present when bets were being registered.

In our view, Deputy Ristagno was lawfully within the Butler residence with the implied consent of the owner in the performance of his official duties. He was therefore "an occupant" within the meaning of Penal Code section 461 and the trial court correctly so found.

■ We find no merit in defendant's contention that there was no substantial evidence that he was guilty of burglary in the first degree because he was armed with a deadly weapon, the knife with a four-inch blade, within the meaning of Penal Code section 460 when he burglarized the Carlson residence between 8:45 a.m. and 10:24 a.m. on November 29, 1972. Bearing in mind the totality of the evidence and the fact that defendant fled from the Butler residence with Deputy Ristagno in pursuit, it was reasonable for the trial court to conclude that the burglary of the Carlson residence occurred after 8:45 a.m. when Loralee Carlson left the Carlson residence and prior to 10:24 a.m., when Deputy Ristagno arrived on the scene and found defendant in the Butler residence and thereafter fled.

In its written opinion on the point of whether or not defendant was guilty of burglary of the Carlson residence in the first degree, the trial court said: "3. With reference to Count 2—burglary of the Carlson residence, the defendant entered a plea of guilty but stipulated that the Court would have to determine the degree, whether first or second degree.

"To resolve that question, the Court must find that the defendant was or was not armed with a deadly weapon at the time he committed such burglary.

"Defendant argues that no witness had testified to actually seeing him in the Carlson house, while he was armed with a deadly weapon, and that the only evidence against him is circumstantial. That is true, but the circumstantial evidence is overwhelming to the effect that he was armed with a deadly weapon at the time he was committing the burglary, and that such weapon was the knife with which he later attacked Officer Ristagno, and which he threw away on his flight from the Butler residence. A knife sheath

was found near to the place of his arrest. The sheath and the knife found in the ivy, along the path of his probable escape route, were 'made for each other.' In order to find him guilty only of second degree burglary, we must assume that he was not armed with the knife at the time he committed the Carlson burglary, but that he armed himself after such burglary and before he burglarized the Butler house. Or, perhaps we should assume that he knew the penalty for entering the premises he intended to burglarize, while armed with a deadly weapon, so he left the weapon outside of the Carlson house? The trouble with that theory is that he obviously had no hesitation in carrying the knife into the Butler house, and no hesitation in using it in a deadly assault on Officer Ristagno. Such speculation is so ridiculous as to warrant little discussion. Obviously, the defendant carried the weapon into both of the premises burglarized. The Court finds the burglary charged in Count 2 to be of the first degree, as the defendant was armed with a deadly weapon during the commission of the burglary." It was reasonable, therefore, for the trial court to conclude from the totality of the evidence that defendant was in possession of the knife during the course of the Carlson burglary to which he pleaded "guilty." The evidence is admittedly indirect and circumstantial, but it was nevertheless substantial. Our duty on appeal is defined in the case relied upon by defendant, *People* v. *Wells, supra, 14* Cal.App.3d 348, 359-360, as follows: " 'This court must view the evidence in a light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' (*People* v. *Sweeney,* 55 Cal.2d 27, 33 [9 Cal.Rptr. 793, 357 P.2d 1049].)

"If the circumstances reasonably justify the trial court's findings, reversal is not warranted merely because the circumstances might also be reasonably reconciled with a contrary finding. (*People* v. *Robillard,* 55 Cal.2d 88, 93 [10 Cal.Rptr. 167, 358 P.2d 295, 83 A.L.R.2d 1086]; *People* v. *Love,* 53 Cal.2d 843, 850-851 [3 Cal.Rptr. 665, 350 P.2d 705].) The test on appeal is whether there is substantial evidence to support the conclusion of the trier of fact; it is not whether guilt is established beyond a reasonable doubt. (*People* v. *Hillery,* 62 Cal.2d 692, 702-703 [44 Cal.Rptr. 30, 401 P.2d 382].)

" 'Before the judgment of the trial court can be set aside for insufficiency of the evidence to support the verdict of the jury, it must clearly appear that upon no hypothesis whatever is there sufficient substantial evidence to support it. . . .' "

We cannot say "that upon no hypothesis whatever is there sufficient substantial evidence to support" the conclusion of the trial court. The issue on

appeal is not whether or not the evidence proved the charge beyond a reasonable doubt, but whether or not the conclusion reached by the trial court was supported by substantial evidence. We are satisfied that it was.

The judgment is affirmed.

Cobey, Acting P. J., and Allport, J., concurred.