Filed 8/19/22  P. v. Pinckney CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>TIMOTHY PINCKNEY,<br><br>    Defendant and Appellant. | B314648<br><br>(Los Angeles County<br> Super. Ct. No. BA299868) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Charlaine F. Olmedo, Judge.  Affirmed.

Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Amanda V. Lopez and Idan Ivri, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In 2008, a jury convicted appellant Timothy Pinckney of first degree murder under the felony murder doctrine, but found not true a rape-murder

special circumstance allegation. In 2019, appellant petitioned for resentencing under Penal Code section 1172.6 (former section 1170.95),[1] arguing he was not the actual killer and had not acted with intent to kill; he further argued that there was insufficient evidence he was a major participant in the crime who acted with reckless indifference to human life. (See generally *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*); *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*).) The trial court disagreed and denied the petition after an evidentiary hearing.

On appeal, appellant contends that there was insufficient evidence to support the trial court's denial of his petition. In so contending, appellant asks us to eschew the substantial evidence standard of review and to apply principles of collateral estoppel or issue preclusion to the jury's prior rejection of the special circumstance allegation.

We discern no reversible error. First, we find substantial evidence to be the appropriate standard of review for section 1172.6, subdivision (d)(3) findings. Second, we need not address appellant's issue-preclusion-related contention as we conclude there was sufficient evidence to support the trial court's finding that appellant acted with reckless indifference to human life— an issue not previously presented to the jury. Accordingly, we affirm the trial court's order.

---

[1] Effective June 30, 2022, Penal Code section 1170.95 was renumbered section 1172.6, with no change in text (Stats. 2022, ch. 58, § 10). Undesignated statutory references are to the Penal Code.

# BACKGROUND

A.     *Procedural Background*[2]

In 2008, following a jury trial, appellant was convicted of one count of first degree murder (§ 187, subd. (a)).  (*People v. Pinckney* (Oct. 22, 2009, B212120) [2009 LEXIS 8404 at p. *1, nonpub. opn.] (*Pinckney I*).)  The only theory of murder presented by the prosecution was that of felony murder committed during a rape or attempted rape.[3]  (*Pinckney, supra,* 2009 LEXIS 8404 at p. *3.)  The jury found not true a rape-murder allegation under section 190.2, subdivision (a)(17) (the special circumstance statute).[4]  (*Pinckney, supra,* 2009 WL 3386022, at p. *1.)  Appellant was sentenced to a

---

[2]     We cite to the opinion in appellant's direct appeal (and prior § 1172.6 appeal) in summarizing the procedural history of the case, which section 1172.6, subdivision (d)(3) expressly permits.

[3]     Regarding vicarious liability, the jury was instructed on direct aiding and abetting and the natural and probable consequences theory of aiding and abetting with the target crime of rape.  The jury was also specifically instructed as to aiding and abetting in the context of felony murder, which required that the aider intended to commit rape and that the victim was killed by any of the participants in the rape either intentionally or unintentionally.

[4]     Regarding the special circumstance allegation, the jury was instructed that in order to find this allegation true, it must find that "the murder of [E.L.] was committed while the defendant was engaged in the commission of the crime of rape."  The jury was further instructed that if it found "beyond a reasonable doubt that the defendant was either the actual killer or an aider and abettor, but [was] unable to decide which, then [it] must also find beyond a reasonable doubt that the defendant, with intent to kill, aided and abetted an actor in the commission of the murder in the first degree."  However, if the jury found "beyond a reasonable doubt [that] the defendant was the actual killer" then it "need not find that the defendant intended to kill a human being in order to find the special circumstance to be true."

term of 25 years to life in state prison and his conviction was affirmed by this court on appeal. (*Pinckney*, *supra*, 2009 LEXIS 8404, at p. *5.)

On May 10, 2019, appellant filed a section 1172.6 petition for resentencing, indicating he had been convicted of first degree felony murder and alleging that he could not now be convicted based on changes in the law because he was not the actual killer, did not with the intent to kill assist the actual killer in the murder, and did not act with reckless indifference to human life during the course of the crime. The trial court summarily denied the petition and we subsequently reversed the trial court's order, directing the resentencing court to issue an order to show cause and hold an evidentiary hearing. (*People v. Pinckney* (Dec. 18, 2020, B304439, 2020 LEXIS 8416 at p. *9, nonpub. opn.] (*Pinckney II*).)

On August 17, 2021, the trial court held an evidentiary hearing. Both parties declined to present new evidence and stated their intentions to make legal arguments based on the existing record of conviction, including the trial transcripts. Following argument the resentencing court denied the petition, finding appellant was either the actual killer or a direct aider and abettor with express malice and alternatively finding appellant was a major participant acting with reckless indifference to human life.

Appellant timely appealed.

B.    *Factual Background*[5]

    1.    *Prosecution Case*

        A. *The November 1988 Murder*

In November 1988, E.L., also known as "Cookie," was living with her mother, Willie Mae, at 1300 East 92nd Street in Los Angeles, California. On November 15, 1988, between 2:00 p.m. and 3:00 p.m., E.L. came home to shower and change clothes. She told her mother that she would see her that night. E.L. was by herself and did not appear to be hurt or injured. Willie Mae never saw her daughter alive again.

On November 16, 1988, in "the early morning hours," David Garrett, who lived across the street from Willie Mae, saw two African American men talking to E.L. by a car. One of the men hit her and "knocked her back against the car." Shortly thereafter, one of the men pushed her into the front seat of the car and "the three of them drove off." Garrett could not identify either man.

---

[5]    As appellant points out, at the evidentiary hearing, "the parties submitted on the trial transcripts, the pleadings filed in the original petition . . . and the record of conviction." The trial court stated that, as part of the record of conviction, it had also considered the prior appellate decisions of this court. (See § 1172.6, subd. (d)(3); *People v. Clements* (2022) 75 Cal.App.5th 276, 292 (*Clements*) [trial judges should not rely on factual summaries in prior appellate decisions at subd. (d)(3) hearings].)

    As neither party addresses whether the trial court improperly considered these opinions we do not address such issues. Our factual summary, and subsequent analysis, is based exclusively on the trial transcripts. (See *Clements, supra,* 75 Cal.App.5th at p. 292 [noting that appellant failed to identify any portions of the court's prior opinions upon which the trial court improperly relied and that appellate court in instant appeal had based its analysis on the trial transcripts—as opposed a factual summary from any prior opinions].)

5

On November 16, 1988, at approximately 6:00 a.m., Calvin Brown, an employee of the Los Angeles Unified School District, arrived at Manual Arts High School, located at 3141 Vermont Avenue in Los Angeles, California. He noticed a body about 10 feet away, in the middle of the handball court. When Brown realized the person was dead, he called the police. The police instructed Brown to wait near the body until they arrived, which he did. Brown never got close enough to touch the body.

That same day, at approximately 7:00 a.m., Los Angeles Police Homicide Detective Loren Zimmerman was sent to Manual Arts High School to investigate a homicide. When he neared the handball court, he saw the body of a female African-American. The body was later identified as that of E.L. He did not touch the body because "no one touches the body until the coroner's office arrives."

E.L. was wearing white denim pants. The left and right side of the pants were "turned down" and unbuttoned. Her shirt was pulled up and turned inside out. There was a shoeprint and other marks on the upper torso. E.L. had a "tear to the inside of [her] left breast." There were also "some black marks that at the time appeared to be either bruises or grease of some sort that went across the body and also more on the stomach" and "sharp right angle markings." In addition, E.L.'s right arm was injured. She had a two-and-a-half inch laceration behind her right ear and lacerations around her right eye, upper lip, and mouth. A tooth with some of the gum still attached was found near her body.

The body was 62 feet east of a spectator bench: the bench was fiberglass with a metal rod beneath. The rod caught Detective Zimmerman's attention because of the right-angle marks on E.L.'s body. The injuries on E.L.'s body appeared to be about the same length as the metal rod, which led

the detective to opine that these injuries on E.L. were consistent with the measurements of the bench's metal rod. The police found blood, a palm print, and fingerprints on the bench. The palm print was "directly across from" the blood.

A sexual assault examination was performed on E.L.'s body. A vaginal sample, genital sample, and anal sample were taken. The parties stipulated that: (1) appellant's semen was found in E.L.'s vaginal swab; (2) semen from an unknown male was found in E.L.'s anal swab; (3) E.L.'s blood was found on the bench at the crime scene; and (4) appellant's palm print was found on the bench. The other fingerprints on the bench did not belong to appellant.

As part of Detective Zimmerman's training, he studied the gathering of fingerprints. He opined that it was unreasonable to expect a fingerprint to remain on an outdoor bench for days after it was made, "because [fingerprints] deteriorate. Fingerprints are typically left by the oils that are in the skin, and eventually over a short period of time, those will evaporate." Sun deteriorates prints faster than humidity.

2. *The January 2005 Reinvestigation of the Case*

In January 2005, Los Angeles Police Detective Richard Bengston and his partner Detective Rick Jackson reopened the investigation into E.L.'s murder after receiving notice of a DNA match to a possible suspect.

On January 17, 2006, Detectives Bengston and Jackson interviewed appellant after advising him of his *Miranda* rights (*Miranda v. Arizona* (1966) 384 U.S. 436). Appellant was shown a photograph of the victim; he said he did not recognize her. The detectives then asked if appellant knew

7

anyone named E.L.[6] in 1987, 1988, or 1989.  Appellant said he did not recognize that name.  Detectives then asked if he knew anyone nicknamed "Cookie" during that same time period.  Appellant responded that he did not recognize the nickname.

When the detectives asked appellant if he was familiar with Manual Arts High School, he said that "he grew up in the area and briefly attended that high school for approximately a year [in 1981]."  However, he told the detectives he was not one to go to school very often and was not on the campus very often.  Appellant said he had never been present on school grounds when someone was hurt.  He also said that he did not hang out at Manual Arts High School after 1981.

The detectives then informed appellant that his DNA was found in E.L.'s body and that his fingerprint was found at Manual Arts High School. Appellant was unable to provide an explanation for either piece of evidence.


3. *The Defense Case*

Dr. Earl Fuller, an obstetrician and gynecologist, testified that while sperm will generally last only three days in the vagina (and seven days in the cervical mucosa), sperm can live up to 27 days in a woman's vagina.[7]  Based on his review of the autopsy report, Dr. Fuller opined that there was no trauma to the victim's genitalia.  Generally, lack of force meant that rape was less likely but it did not "totally rule out a forcible event."

---

[6]    The detectives recited E.L.'s full first and last name in posing this query.

[7]    Dr. Fuller stated that the outer time limits generally involve "infertility patients" who are "fastidious about trying to preserve sperm."

Clarence Collins, owner of Collins Fingerprint Consulting Service, stated that the palm print police recovered at the edge of the bench belonged to appellant. The other fingerprints recovered from the bench did not belong to appellant. Collins had "no idea" when appellant would have placed his hand at the edge of the bench as "there is no way to tell how old a fingerprint or palmprint is." Collins himself had had never recovered fingerprints a month after they were made, but once found fingerprints three weeks after they were made.

## DISCUSSION

Appellant contends there was insufficient evidence to support the trial court's denial of his section 1172.6 petition. In so contending, appellant argues that: (1) we should employ an independent standard of review; and (2) the trial court was precluded from finding that he was the actual killer or acted with express malice because the jury found the felony murder special circumstance allegation not true.

As explained below, we find the first argument unpersuasive and we need not address the second; substantial evidence supports the trial court's alternative finding that appellant was a major participant who acted with reckless indifference to life.

I.     *Section 1172.6 and the Petitioning Procedure*

Senate Bill No. 1437, which took effect on January 1, 2019, limited accomplice liability under the felony-murder rule and eliminated the natural and probable consequences doctrine as it relates to murder, to ensure that a person's sentence is commensurate with his or her individual criminal culpability. (*People v. Gentile* (2020) 10 Cal.5th 830, 842–843 (*Gentile*);

9

*People v. Lewis* (2021) 11 Cal.5th 952, 957, 971 (*Lewis*).) To that end, and as relevant here, Senate Bill No. 1437 amended the felony-murder rule by adding section 189, subdivision (e), which now provides that a participant in the perpetration of qualifying felonies is liable for felony murder only if the person: (1) was the actual killer; (2) was not the actual killer but, with the intent to kill, acted as a direct aider and abettor; or (3) was a major participant in the underlying felony and acted with reckless indifference to human life, as described in section 190.2, subdivision (d). (*Gentile*, at p. 842.)

Senate Bill No. 1437 also added section 1170.95 (now § 1172.6), which created a procedure whereby persons convicted of murder under a now-invalid felony-murder (or natural and probable consequences) theory may petition to vacate their convictions and for resentencing. Where, as here, the petitioner has made a prima facie showing of entitlement to relief, the trial court must issue an order to show cause and then hold a hearing to determine whether to vacate the murder conviction and recall the sentence. (§ 1172.6, subd. (d)(3); *Lewis, supra,* 11 Cal.5th at p. 960.) In making that determination, the prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence. (§ 1172.6, subd. (d)(3); *Lewis*, at p. 960.) At the subdivision (d) hearing, the prosecution has the burden to prove the petitioner's ineligibility beyond a reasonable doubt. (§ 1170.95, subd. (d)(3).)

II. *Substantial Evidence Is the Appropriate Standard of Review Following a Subdivision (d)(3) Hearing*

In reviewing trial court findings following a section 1172.6 hearing, appellate courts have uniformly applied the substantial evidence standard of review. (See, e.g., *People v. Cooper* (2022) 77 Cal.App.5th 393, 412 (*Cooper*);

*Clements, supra,* 75 Cal.App.5th at p. 298; *People v. Garrison* (2021) 73 Cal.App.5th 735, 747; *People v. Ramirez* (2021) 71 Cal.App.5th 970, 985 (*Ramirez*); *People v. Williams* (2020) 57 Cal.App.5th 652, 663; *People v. Bascomb* (2020) 55 Cal.App.5th 1077, 1087.) Appellant nevertheless argues that we should review the evidence independently because the superior court judge who ruled on the section 1170.95 petition was not the judge who heard the testimony at trial, did not make any credibility determinations, and relied on a "cold record." We disagree.

In *Clements, supra,* 75 Cal.App.5th 276, the appellate court rejected an identical argument by relying on our Supreme Court's opinion in *People v. Perez* (2018) 4 Cal.5th 1055 (*Perez*). (*Clements, supra,* 75 Cal.App.5th at p. 302.) *Perez* concerned the analogous context of a petition for recall of sentence under Proposition 36. In such a proceeding, certain persons sentenced under the Three Strikes law are eligible to petition the trial court for resentencing. (§ 1170.126, subds. (a), (b).) The question before the trial court in *Perez* was whether the defendant was ineligible for resentencing because he was armed with a deadly weapon during the commission of the relevant offense. (*Perez*, at p. 1062.) On appeal, the People argued that de novo review of the trial court's finding on that issue was "more appropriate because trial courts do not have an advantage over appellate courts in determining eligibility based on the record of conviction." (*Id*. at p. 1066.) Our Supreme Court disagreed, concluding that "even if the trial court is bound by *and relies solely on the record of conviction to determine eligibility*, [where] the question . . . *remains a question of fact* . . . we see no reason to withhold the deference generally afforded to such factual findings." (*Ibid.,* italics added.) Here, similar to *Perez*, the trial court made a finding regarding appellant's eligibility for resentencing, which was a question of

fact. As such, there is no reason to deviate from the substantial evidence standard of review generally applied to such determinations. (See *Clements, supra,* 75 Cal.App.5th at p. 302.)

In resisting this conclusion, appellant relies heavily on *People v. Vivar* (2021) 11 Cal.5th 510 (*Vivar*), which held an appellate court should independently review an order denying a motion to vacate a conviction under section 1473.7. Under that statute, a person is entitled to relief if the trial court finds there was prejudicial error affecting the person's ability to meaningfully understand the actual or potential immigration consequences of a criminal plea. (*Vivar,* at pp. 527–528.) *Vivar* concluded that independent review was appropriate, and identified "multiple factors" for its conclusion. (*Id.* at p. 527.) Although one of those factors was that "the judge adjudicating the resulting motion may never have participated in any of the underlying proceedings and must rely entirely on a cold record" (*id.* at pp. 526–527), the Court emphasized that the questions raised by a section 1473.7 motion, "while mixed questions, are predominantly questions of law." (*Vivar,* at p. 524.)

Unlike in *Vivar,* the question whether appellant acted with reckless indifference to human life is predominantly a factual determination.[8] Moreover, the *Vivar* court expressly cautioned that its opinion solely concerned the standard of review for section 1473.7 motions, and did not

---

[8]     Appellant's reliance on *Flores v. Nature's Best Distribution, LLC* (2016) 7 Cal.App.5th 1, is similarly misplaced. In *Flores,* the court simply stated that the interpretation of a contract (absent extrinsic evidence) is a pure question of law subject to de novo review. (*Id.* at p. 9.) Notwithstanding appellant's assertion that the superior court here "[was] only reviewing documents," the "documents" at issue contained trial testimony and required the trial court to, *inter alia,* weigh evidence, resolve potential conflicts, and make reasonable deductions. (See *People v. Zamudio* (2008) 43 Cal.4th 327, 357–358 (*Zamudio*) [discussing trier of fact role and province].)

12

"disturb[] [the] familiar postulate" that "'an appellate court should defer to the factual determinations made by the trial court' regardless of 'whether [its] rulings [were based] on oral testimony or declarations.'" (*Vivar, supra,* 11 Cal.5th at p. 528, fn. 7.)

Appellate courts have routinely followed this command when reviewing other postjudgment rulings involving questions of fact, applying substantial evidence standards to petitions for resentencing pursuant to Proposition 36 (*Perez, supra,* 4 Cal.5th at p. 1066) and Proposition 47 (*People v. Sledge* (2017) 7 Cal.App.5th 1089, 1095–1096, as well as to petitions to extend state hospital commitments (*People v. Crosswhite* (2002) 101 Cal.App.4th 494, 507–508). As such, we see no reason to withhold the deference generally afforded to the analogous factual findings made during section 1172.6 proceedings, even where the court makes those findings on a cold record. To conclude otherwise—and accept appellant's assertion that substantial evidence review is only warranted where the trial court made "credibility determination[s] beyond the ken of the appellate court"—would require us to adopt a highly circumscribed (and, frankly, unprecedented) view of the scope of duties traditionally delegated to the trier of fact. (See, e.g., *Zamudio, supra,* 43 Cal.4th at pp. 357–358; *People v. Redmond* (1969) 71 Cal.2d 745, 755 [noting that appellate court must "presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence"].) We decline to do so.

Substantial evidence review applies here. (*Clements, supra,* 75 Cal.App.5th at p. 302.) Under that familiar standard, "we review the record 'in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the

defendant guilty beyond a reasonable doubt.'" (*People v. Westerfield* (2019) 6 Cal.5th 632, 712.) Reversal is unwarranted unless it appears "'that upon no hypothesis whatever is there sufficient substantial evidence to support [the judgment].'" (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

III. *We Need Not Address Appellant's Issue Preclusion-Related Contentions*

As previously indicated, appellant argues that the jury's not true finding on the special circumstance allegation at his original trial—which was supported by theories of appellant's intent to kill or actual killer status—precluded the instant trial court from finding that appellant either harbored the intent to kill or was the actual killer.

In support of this argument, appellant relies on principles of issue preclusion and the recent holding in *Cooper, supra,* 77 Cal.App.5th 393.

In *Cooper,* the court held that the trial court erred in denying a section 1172.6 petition by relying on a finding that petitioner possessed and/or fired a firearm because the jury at the original trial had acquitted petitioner of being a felon in possession of a firearm—and the trial court heard no new evidence. (*Cooper*, *supra*, 77 Cal.App.5th at pp. 398, 416.) The *Cooper* court found it unnecessary to decide whether principles of issue preclusion apply to section 1172.6 proceedings. (*Id*. at p. 413.) Instead the court concluded that not true findings (or acquittals) are binding on the prosecution under the general terms of 1172.6 petitions through a comparison to the Three Strikes resentencing provision in section 1170.126. (*Id*. at pp. 413–415.)

Here, we need not address any of appellant's issue preclusion/*Cooper*-related contentions because the trial court also denied appellant's section 1172.6 petition on a separate theory not considered or presented at appellant's original trial—i.e., that appellant was liable under the amended

14

law of felony murder as a major participant in the rape who acted with reckless indifference to human life. As such, if the trial court's alternative finding is supported by substantial evidence (which we conclude it was, see Section IV, *post*), that finding provides us with an independent basis upon which to affirm the trial court's order. (*People v. Smithey* (1999) 20 Cal.4th 936, 972 [judgment must be affirmed on any legally valid basis].)[9]

IV.  *Sufficient Evidence Supports the Trial Court's Finding that Appellant Was a Major Participant in the Underlying Rape Who Acted with Reckless Indifference to Life*

Appellant contends that the trial record does not support the court's finding that he was a major participant in the underlying felony acting with a reckless regard for life. We disagree.

A.  *Trial Court's Subdivision (d)(3) Findings*[10]

After arguments by both parties, and based on its review of the record of conviction, the trial court found as follows: "As an independent fact finder, I find the People have met their burden of proof beyond a reasonable doubt

---

[9]  Appellant acknowledges this reality in his opening brief, stating "[b]ecause the current special circumstance instruction sets forth a different standard for determining whether someone is liable under a theory of felony murder" (than that presented at his trial) a "remaining theory of liability for murder is that appellant was a major participant in the rape acting with reckless disregard for human life" to which the doctrine of issue preclusion does not apply.

[10]  We set forth the trial court's full findings here because some of the factual findings/deductions made by the court in relation to the intent to kill/actual killer elements are applicable to the reckless indifference standard.

that [appellant] is either the actual killer or a direct aider and abettor. I disagree with the defense characterization that all you have is a palm print on a bench. You do have the palm print on a bench. You have [appellant's] semen in the victim's vagina. And I also have [appellant's] statement, when asked about why his semen is in her and why his palm print is on the bench, he has absolutely no explanation and denies ever being at the location or having had sex with the victim in this particular case.[11] So you do have additional evidence aside from just the palm print on the bench. She was—the victim was savagely beaten . . . around her face and body. In either case, whether [appellant] was the actual killer or a direct aider and abettor, [appellant] harbored express malice in the intent to kill. Alternatively, even without intent to kill, the defendant acted as a major participant in the case who acted with reckless indifference to human life. All that the People established beyond a reasonable doubt. As I stated, [appellant] was either the killer or direct aider and abettor. Accordingly, the 1170.95(a) petition is denied."

B. *The Banks and Clark Factors*

In *Banks, supra,* 61 Cal.4th 788, and *Clark, supra,* 63 Cal.4th 522, the California Supreme Court set forth the factors relevant to determine whether a defendant is a major participant in a felony who acted with reckless indifference to life.[12]

---

[11] Defense counsel had argued that appellant's semen could have been found in E.L.'s body because they had consensual sex up to seven days before her death, not because he raped and killed her.

[12] *Banks* and *Clark* considered the major participant/reckless indifference theory in the context of a felony murder special circumstance, but Senate Bill

16

The *Banks* factors, pertaining to major participant status, include the role the defendant had in planning the criminal enterprise leading to one or more deaths, his role in supplying or using lethal weapons, his awareness of the dangers posed by the nature of the crime (the weapons used, or the past experience of the other participants), whether he was present at the scene of the killing, whether his actions or inactions played a particular role in the death, and what he did after lethal force was used. (*Banks*, *supra,* 61 Cal.4th at p. 803.)

The *Clark* factors, describing reckless indifference, include the defendant's knowledge of weapons used in the crime, how those weapons were used, the number of weapons used, the defendant's proximity to the crime, his opportunity to stop the killing or aid the victim[s], the duration of the crime, the defendant's knowledge of the killer's propensity to kill, and the defendant's efforts, if any, to minimize the possibility of violence during the crime. (*Clark*, *supra*, 63 Cal.4th at pp. 616–623.)

No single factor is determinative (*People v. Clark*, *supra*, 63 Cal.4th at pp. 618, 621–623). Instead, courts are to assess the totality of a defendant's culpability within the "spectrum" established by the United States Supreme Court in *Enmund v. Florida* (1982) 458 U.S. 782, in which defendant was the classic getaway driver for an armed robbery, and *Tison v. Arizona* (1987) 481 U.S. 137 (*Tison*), in which defendants helped convicted murderers escape from prison, providing weapons, and stood by as their confederates debated killing, then killed, an innocent family of four. (*People v. Banks, supra*, 61 Cal.4th at pp. 801–803; *People v. Clark*, *supra,* 63 Cal.4th at pp. 632; *People*

---

No. 1437 amended section 189 to raise the level of culpability for ordinary felony murder to that formerly required in the special circumstance.

17

*v. Strong* (Aug. 8, 2022) 2022 Cal. LEXIS 4563, at pp. *6–7 [discussing the *Tison-Enmund* spectrum of culpability].)

At its core, "[r]eckless indifference to human life is 'implicit in knowingly engaging in criminal activities known to carry a grave risk of death'" (*In re Scoggins* (2020) 9 Cal.5th 667, 676, quoting *Tison, supra*, 481 U.S. at p. 157), and "encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the [appellant] does not specifically desire that death as the outcome of his actions." (*Clark, supra*, 63 Cal.4th at p. 617.)

###### C.   *Analysis*

Here, appellant admits that there was "ample evidence that [he] was a major participant in the rape" but contends that "there is no evidence that he acted with reckless disregard for human life relative to the murder." As to the latter point, we disagree.

First, the major participant and reckless indifference elements "'significantly overlap'" (*Clark, supra*, 63 Cal.4th at p. 615, quoting *Tison, supra*, 481 U.S. at p. 153), and therefore a defendant's status as a major participant in the underlying felony will "often provide significant support for . . . a [reckless indifference] finding." (*Tison, supra*, 481 U.S. at p. 158, fn. 12.) This is so because a defendant's "[p]roximity to the murder and the events leading up to it" may allow him to observe another participant's willingness to use lethal force and, absent the defendant's intervention (or other extenuating circumstances) suggest that he shared in his cohort's actions and mental state. (*Clark, supra,* 63 Cal.4th at p. 619; *Tison, supra*, 481 U.S. at p. 158.) Appellant's insistence that there exists "*no* evidence" of reckless indifference is belied by this significant overlap. Second, additional

*Clark* factors weigh in favor of a finding of reckless indifference, thereby supporting the trial court's ultimate determination.

First, the evidence supports an inference that appellant was one of the two men who, while talking to E.L., knocked her against a car, pushed her into it, and drove off. This abduction constitutes evidence that appellant was complicit in the violence against E.L. from the beginning of their encounter, and had no intention to minimize the use of violence. (*Clark, supra,* 63 Cal.4th at p. 622.)

Second, makeshift weapons were used to kill E.L. at the scene of the crime. (*Clark*, s*upra*, 63 Cal.4th at pp. 618–619.) A nearby metal rod was consistent with markings on E.L.'s torso, and her blood was on the bench. As the court pointed out, the circumstances suggest "the bench was used as a murder weapon" and appellant's palm print was found directly across from E.L.'s blood on the bench, while his semen was found inside her body. It would have been evident to appellant that such a beating involved a grave risk of death. (*In re McDowell* (2020) 55 Cal.App.5th 999, 1012.)

Third, the duration of the crime also supports a finding of reckless indifference. (*Clark*, *supra*, 63 Cal.4th at pp. 620–621.) The attack on E.L. was not a momentary act of violence, such as an errant gunshot. There was an abduction by car, movement of the victim to another location, and then a physical beating and rape. E.L. had a cut or tear on the inside of her left breast and lacerations behind her ear, eye, and mouth. One of her teeth— with flesh attached—had been knocked out. As a matter of common sense, all of this would have taken some period of time, substantially more than a few minutes, before E.L. died, allowing ample opportunity for appellant to put a stop to the attack. (Cf. *Ramirez, supra,* 71 Cal.App.5th at p. 989

19

[appellant did not have a "meaningful opportunity" to intervene in sudden and unprovoked shooting by cohort standing on other side of car].)

In sum, the trial record reflects that (1) appellant helped abduct E.L., (2) appellant's palm print was found at the scene, on a bench used to injure E.L., and that (3) appellant's DNA was inside her body. This, in combination with the fact that that E.L. was hit hard enough to dislodge a tooth, and was beaten with the metal rod and smashed against the bench, indicates that appellant aided in the rape "with knowledge of the danger to, and conscious disregard for, [the victim's] life." (*Clements, supra*, 75 Cal.App.5th at p. 299.)

Appellant's arguments to the contrary are either tangential or logically infirm.

First, appellant claims the court should have disregarded the fact that he was unable to explain how his semen was found in E.L.'s body because relying on that fact violated his Fifth Amendment right not to testify. However, the court merely considered that appellant told police he did not know E.L. and had not been present at the location. This evidence was admitted at trial, and the parties agreed that they would rely solely on the trial evidence at the subdivision (d)(3) hearing. In any event, appellant interposed no Fifth Amendment objection to the trial court's reliance on this evidence, thereby forfeiting any challenge for appeal. (*People v. Polk* (2010) 190 Cal.App.4th 1183, 1193–1194.)

Second, appellant suggests that because there were no eyewitnesses or direct evidence as to the exact chain of events leading to E.L.'s death, any inferences about what happened must be speculative. However, substantial evidence review permits reasonable inferences to be drawn from circumstantial evidence even when there are no eyewitnesses. (*People v. Sinclair* (1974) 36 Cal.App.3d 891, 898–899 (*Sinclair*); see also *People v.*

20

*Manibusan* (2013) 58 Cal.4th 40, 87 [noting that "'[e]vidence of a defendant's state of mind is almost inevitably circumstantial, but circumstantial evidence is as sufficient as direct evidence to support a conviction'"].)

For example, appellant claims there was no evidence that he and the other assailant "planned" the rape. Yet, the trial court could have logically inferred that appellant worked with the other man to abduct E.L. by car and take her to a second location for that purpose. (*Zamudio, supra,* 43 Cal.4th at p. 357 [substantial evidence review requires courts to "presume . . . the existence of every fact the [trial court] could reasonably have deduced from the evidence"].)

Appellant also contends there is no evidence that the rape in this case involved a greater likelihood of murder than what is inherent to any other rape. However, the sexual assault was accompanied by a violent attack, including the use of weapons, that dramatically increased the risk of death separate from the sexual aspect of the crime. Moreover, as appellant subsequently admits, movement of a victim increases the risk of harm. (*People v. Dominguez* (2006) 39 Cal.4th 1141, 1153–1154.) Here, appellant and the other assailant abducted E.L., drove her to the schoolyard, and took her near the bench where her body was found.[13]

To the extent appellant contends that there was no evidence that he personally obtained the weapons used to kill E.L., this argument misses the point. The weapons used on E.L. were objects at the scene, including a

---

[13] To the extent appellant states that "it cannot be *affirmed* that he was responsible for transporting the victim to the scene of the rape" (because he was not positively identified by Garrett as one of the two men who abducted E.L.), such an inference could reasonably be made—and would be consistent with the overall evidence. (Italics added.) Indeed, appellant admits there is ample evidence of his presence at the crime scene, as well as his major participation in the underlying rape.

bench.  Thus, this case is not similar to those where only one assailant in a large group had a gun, making that person more culpable and the others less so.  In any event, in discussing the *Clark* factors, our Supreme Court has made clear that no single factor is determinative—or even necessary.  (*Clark, supra,* 63 Cal.4th at pp. 618, 621–623.)  Rather, the core inquiry is whether the defendant evinced "a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions."  (*Id*. at p. 617; *People v. Strong* (Aug. 8, 2022) 2022 Cal. LEXIS 4563, at p. *8.)  The trial record, as explained above, supports the conclusion that appellant evinced this requisite mental state.  Only where "'upon no hypothesis whatever is there sufficient substantial evidence to support'" the judgment is reversal warranted.  (*People v. Bolin, supra,* 18 Cal.4th at p. 331.)  Appellant cannot meet that standard and we therefore affirm the trial court's denial of his resentencing petition.

## DISPOSITION

The order denying appellant's resentencing petition is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, J.

We concur:


MANELLA, P. J.                    COLLINS, J.

22