Filed 2/7/23  P. v. Perez CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SANDRO SYLVESTRE PEREZ,<br><br>    Defendant and Appellant. | B317087<br><br>(Los Angeles County<br> Super. Ct. No. BA240900) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Eleanor J. Hunter, Judge.  Affirmed.

Marc Eric Norton for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Charles S. Lee and Viet H. Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In 2004, a jury convicted appellant Sandro Sylvestre Perez of two counts of first degree murder and found true special circumstance allegations

that the murders were committed during the commission of a kidnapping and robbery and that there were multiple murders.

In 2019, appellant filed a petition for resentencing under Penal Code section 1172.6 (former section 1170.95),[1] which provides that persons who were convicted under theories of felony murder or murder under the natural and probable consequences doctrine, and who could no longer be convicted of murder following the enactment of Senate Bill No. 1437 (S.B. 1437), may petition the sentencing court to vacate the conviction and resentence on any remaining counts. (Stats. 2018, ch. 1015, § 1, subd. (f).)

The trial court denied the petition after an evidentiary hearing. The trial court found that the prosecution had sustained its burden of showing beyond a reasonable doubt that appellant was guilty under a still-valid theory of murder—i.e., as a major participant in the robbery who acted with reckless indifference to human life.

On appeal, appellant contends there was insufficient evidence to support the trial court's denial of his petition. We disagree and affirm the trial court's order.


**BACKGROUND**

I.   *Procedural Background*

In 2004, following a jury trial, appellant was convicted of two counts of first degree murder (§ 187, subd. (a)), one count of robbery (§ 211), one count of carjacking (§ 215, subd. (a)), two counts of kidnapping for carjacking (§ 209.5, subd. (a)), and one count of arson (§ 451, subd. (d)). The prosecution

---

[1]   Effective June 30, 2022, section 1170.95 was renumbered section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10.) Undesignated statutory references are to the Penal Code.

set forth two theories of liability for the murder charges: (1) appellant aided and abetted in the target offense of robbery, the natural and probable consequence of which was murder; and (2) appellant directly aided and abetted the murders under the felony murder rule. The jury separately found true the special circumstance allegations of multiple murders (§ 190,2, subd. (a)(17)), and that the murders were committed during the commission of a kidnapping and robbery (§ 190.2, subd. (a)(17)). Appellant was sentenced to two terms of life without the possibility of parole, plus consecutive terms of five years for the carjacking conviction and eight months for the arson conviction.[2] Appellant's conviction was affirmed by this court on appeal. (*People v. Perez* (June 30, 2006, B181409) [2006 Cal. App. Unpub. LEXIS 5829, at pp. *2–3, nonpub. opn.] (*Perez I*).)

On June 24, 2019, appellant filed a section 1172.6 petition for resentencing, indicating he had been convicted of first degree felony murder and alleging that he could not now be convicted based on statutory changes in the law made by S.B. 1437. Appellant argued he was not the actual killer and had not acted with intent to kill; he further argued there was insufficient evidence he was a major participant in the crime who acted with reckless indifference to human life. (See generally *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*); *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*).)

The trial court summarily denied appellant's petition, finding that he was ineligible for relief as a matter of law because the jury had found true the kidnapping- and robbery-murder special circumstances, which included findings that appellant intended to kill the victims or was a major participant who acted with reckless indifference to human life. We subsequently

---

[2] The court imposed and stayed the sentence on appellant's robbery and kidnapping for carjacking convictions, pursuant to section 654.

3

reversed the trial court's order. (*People v. Perez* (Aug. 7, 2020, B300741 [2020 Cal. App. Unpub. LEXIS 5046 at p. *17, nonpub. opn.] (*Perez II*).) Citing *People v. Torres* (2020) 46 Cal.App.5th 1168 (*Torres*), abrogated on other grounds in *People v. Lewis* (2021) 11 Cal.5th 952, 963 (*Lewis*), we concluded that "the jury's 2004 kidnapping- and robbery-murder special circumstance findings alone do not, as a matter of law, render [appellant] ineligible for relief" because the jury's verdicts were delivered prior to our high court's decision in *Banks* and *Clark* wherein the court clarified what it means for an aiding and abetting defendant to be a "major participant" in the underlying felony, who acts with "reckless indifference to human life." (*Perez II, supra,* 2020 Cal. App. Unpub. LEXIS 5046 at pp. **12–17; *Torres, supra,* 46 Cal.App.5th at p. 1179.)[3]

Upon remand, the trial court found that appellant had made a prima facie case for eligibility for relief, and the court proceeded to hold an evidentiary hearing on the petition. At the hearing, both parties declined to present new evidence and stated their intentions to make legal arguments based on the existing record of conviction, including a transcript of appellant's interview with law enforcement and portions of the reporter's transcripts from appellant's trial.[4]

---

[3]    Our high court subsequently adopted the position espoused in *Torres* in *People v. Strong* (2022) 13 Cal.5th 698, 710 [concluding that "[f]indings issued by a jury before *Banks* and *Clark* do not preclude a defendant from making out a prima facie case for relief under Senate Bill 1437"].)

[4]    Along with the transcript of appellant's police interview, the prosecution submitted a videotape of the interview. The latter was played in its entirety for the jury at appellant's trial. (*Perez I, supra,* 2006 Cal. App. Unpub. LEXIS 5829, at p. *9.)

After considering argument and the evidence submitted by the parties, the resentencing court denied the petition. The court found that "the People have proven beyond a reasonable doubt that [appellant] was a major participant and acted with reckless indifference to human life" and was therefore "ineligible for resentencing pursuant to . . . section [1172.6, subd. (d)(3)]."

Appellant timely appealed.

I.      *Factual Background*[5]

    A.      *Prosecution Case at Trial*

In 1997, Hilario Sierra, Luis Rodriguez, and Maria Nunez participated in a home invasion robbery at Guadalupe Gurrola's residence near Stockton and Long Beach Boulevards in Compton. They believed that the home contained large amounts of money and drugs. Sierra and Rodriquez were armed with guns and forced their way into the home. They tied up the occupants and stole approximately $30,000. Appellant was not involved in this robbery.

On February 2, 1998, Sierra, Nunez, Rodriguez, along with appellant (then age 23), Jose Morales, and Jose Arce, decided to rob the same house.[6] They drove together in a van to the area and parked down the street to observe the house.

---

[5]      Our factual summary is based on the trial transcripts submitted to the resentencing court.

[6]      Rodriguez testified that all of them proceeded to the house on the day of the robbery, knowing this was the plan. Appellant told police that he and his accomplices met at a park the day before the murder to hash out the plan to rob Gurrola as some type of revenge plot for Gurrola's previous robbery of Nunez.

Upon arrival, they saw Gurrola leaving his home in a red van. Appellant and his associates abandoned their original plan to rob the house. Instead, they changed course and followed the red van with the intent of robbing Gurrola. They pulled their van alongside of Gurrola's van. Sierra and Rodriguez ran up to Gurrola's van and forced Gurrola into the back of it. As Sierra and Rodriguez climbed into Gurrola's van, they noticed that Gurrola's 14-year-old son was inside and ordered him to also move to the back of the van.

Appellant and Morales walked over and got into Gurrola's van. Appellant climbed into the driver's seat, started the van, and drove away. Appellant knew Sierra and Rodriguez had guns drawn. While driving, appellant heard someone making threats, including to kill one of the victims, and heard Gurrola's son asking, "What money?"

The threats and demands continued while appellant drove to a secluded area where the group could search Gurrola's van. No money was found during the search. Appellant and his accomplices had a meeting. The group decided to not let Gurrola or his son go, and instead to get back on the highway and head north.[7] Appellant resumed his role as driver, and while they continued driving with the victims, both Gurrola and his son were threatened and beaten in the back of the van. Gurrola's wallet was taken, and his automatic teller machine (ATM) card was found. Sierra shot Gurrola in the leg to force him to disclose his personal identification number (PIN). Appellant came up with the idea to go to a bank he knew to use Gurrola's ATM card.

---

[7] While Rodriguez testified that all the men made this decision as a group, appellant told police that he did not remember who was making decisions at this point.

At the bank, appellant and Morales exited the van and went to the ATM. The ATM was out of sight of Sierra and Rodriguez, who remained in the van. After several attempts, appellant successfully withdrew $300 from Gurrola's account. Appellant told Morales to leave and not return to the van because he wanted to "protect" him. Morales was able to leave the group without consequence. Appellant got back into the van and drove away.

While appellant drove, Gurrola and his son had floor mats put over their heads. They were shot multiple times in the head. After they were killed, appellant came up with the idea to destroy the evidence by burning the van with the victims inside. He drove to a gas station he knew, got out of the van, and went into the convenience store to buy a snack. After Sierra filled a gas can with fuel, appellant drove the van to an underpass. The van was set on fire with the victims inside.

Appellant, Sierra, and Rodriguez carjacked a Mustang, which they used to flee the area. Rodriguez was dropped off at his home. Appellant and Sierra abandoned the stolen car and walked to appellant's home. They went to a Food-4-Less store to withdraw more money with Gurrola's ATM card, but they were unsuccessful. Appellant, Sierra, Morales, and Rodriguez then met at a nearby Chinese restaurant for dinner.

Two days later, appellant fled to Mexico, where he lived for several years before being extradited back to the United States.

B. *The Defense Case*

Appellant testified in his own defense. He admitted that he had been involved in the incident and that he had gone to live in Mexico afterwards. According to appellant, his friends picked him up at his parents' house. They drove to a residence and planned to rob the occupants to avenge a previous

7

robbery. Appellant admitted that, after Gurrola was shot, he drove to the bank. He and Morales withdrew $300. Appellant told Morales to leave after they withdrew the money because Morales was scared. Appellant gave the money to Sierra.

Appellant got back into the van and drove on the freeway heading south. The plan was to "get rid" of Gurrola, his son, and the van—which appellant understood to mean that they would simply drop off Gurrola and his son, and leave them and the van behind. However, while driving, appellant heard several gunshots. Realizing that Gurrola and his son had been killed, appellant suggested that they "destroy the evidence."

Appellant then drove the van to a gas station where Sierra purchased a container and filled it with gasoline. Appellant drove to a nearby freeway underpass and parked the van. Sierra and/or Rodriguez doused the van in gasoline, and Sierra set it ablaze, with the bodies of Gurrola and his son inside.

Sierra carjacked another car and appellant left with Sierra and Rodriguez in the stolen car. Sierra, who was driving, released the car's owner a few blocks away. He then dropped off Rodriguez, after which Sierra and appellant went to appellant's home. Next, they drove to a nearby Food-4-Less store and, at Sierra's urging, appellant tried to withdraw more money from an ATM machine. He was unable to do so. Later, they met Rodriguez and Morales for a meal at a Chinese restaurant located across the street from the Food-4-Less.

Appellant testified he was scared during the entire incident. Sierra was the person who had threatened Gurrola, and appellant thought that Sierra might harm appellant if he did not comply with Sierra's orders. Appellant was still afraid of Sierra at the time of trial.

Both appellant and his sister testified that appellant had never gotten into fights at school or used a gun, and he did not have an aggressive personality. Appellant's sister, however, did not know the friends that appellant associated with at the time of the incident.

## DISCUSSION

I. *Section 1172.6 and the Petitioning Procedure*

S.B. 1437, which took effect on January 1, 2019, limited accomplice liability under the felony-murder rule and eliminated the natural and probable consequences doctrine as it relates to murder, to ensure that a person's sentence is commensurate with his or her individual criminal culpability. (*People v. Gentile* (2020) 10 Cal.5th 830, 842–843 (*Gentile*); *Lewis, supra,* 11 Cal.5th at pp. 957, 971.) To that end, S.B. 1437 amended the felony-murder rule by adding section 189, subdivision (e), which provides that a participant in the perpetration of qualifying felonies is liable for felony murder only if the person: (1) was the actual killer; (2) was not the actual killer but, with the intent to kill, acted as a direct aider and abettor; or (3) was a major participant in the underlying felony and acted with reckless indifference to human life, as described in section 190.2, subdivision (d). (*Gentile*, at p. 842.)

S.B. 1437 also added section 1170.95 (now § 1172.6), which created a procedure whereby persons convicted of murder under a now-invalid felony-murder (or natural and probable consequences) theory may petition for vacatur of their convictions and resentencing. Where, as here, the petitioner makes a prima facie showing of entitlement to relief, the trial court must issue an order to show cause and then hold a hearing to determine whether to vacate the murder conviction and recall the sentence. (§ 1172.6, subd. (d)(3);

9

*Lewis*, *supra*, 11 Cal.5th at p. 960.) In making that determination, the prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence. (§ 1172.6, subd. (d)(3); *Lewis*, at p. 960.) At the subdivision (d) hearing, the prosecution has the burden to prove the petitioner is guilty of murder under the amended law. (§ 1172.6, subd. (d)(3).)

II.   *Sufficient Evidence Supports the Trial Court's Finding that Appellant Was a Major Participant in the Underlying Robbery Who Acted with Reckless Indifference to Life*

Appellant contends there was insufficient evidence to support the trial court's denial of his section 1172.6 petition. We find that substantial evidence supports the trial court's finding that appellant was a major participant who acted with reckless indifference to life.

A.   *Standard of Review*

The trial court's decision to deny the petition will be affirmed if supported by substantial evidence. (*People v. Clements* (2022) 75 Cal.App.5th 276, 298; *People v. Williams* (2020) 57 Cal.App.5th 652, 663–664.) Under that familiar standard, "we review the record 'in the light most favorable to the judgment below to determine whether it discloses substantial evidence— that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.'" (*People v. Westerfield* (2019) 6 Cal.5th 632, 712.) Reversal is unwarranted unless it appears "'that upon no hypothesis whatever is there sufficient substantial evidence to support [the judgment].'" (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

B.    *The* Banks *and* Clark *Factors*

In *Banks, supra,* 61 Cal.4th 788, and *Clark, supra,* 63 Cal.4th 522, the California Supreme Court set forth the factors relevant to determine whether a defendant is a major participant in a felony who acted with reckless indifference to life.

The *Banks* factors, pertaining to major participant status, include: the role the defendant had in planning the criminal enterprise leading to one or more deaths; the defendant's role in supplying or using lethal weapons; his or her awareness of the dangers posed given the nature of the crime, the weapons used, or the past conduct of the other participants; whether he or she was present at the scene of the killing; whether he or she was in a position to facilitate or prevent the murder; whether his or her actions or inactions played a particular role in the death; and what he or she did after lethal force was used.  (*Banks*, *supra,* 61 Cal.4th at p. 803.)

The *Clark* factors, describing reckless indifference, include; the defendant's knowledge of weapons used in the crime; how those weapons were used; the number of weapons used; the defendant's proximity to the crime; his or her opportunity to stop the killing or aid the victim[s]; the duration of the crime; the defendant's knowledge of the killer's propensity to kill; and the defendant's efforts, if any, to minimize the possibility of violence during the crime.  (*Clark*, *supra*, 63 Cal.4th at pp. 616–623.)

No single factor is determinative.  (*Clark*, *supra*, 63 Cal.4th at pp. 618, 621–623.)  Instead, courts are to assess the totality of a defendant's culpability within the "spectrum"  established by the United States Supreme Court in *Enmund v. Florida* (1982) 458 U.S. 782 (*Enmund*), in which defendant was the classic getaway driver for an armed robbery, and *Tison v. Arizona* (1987) 481 U.S. 137 (*Tison*), in which defendants helped convicted

11

murderers escape from prison, provided weapons, and stood by as their confederates debated killing, then killed, an innocent family of four. (*Banks, supra*, 61 Cal.4th at pp. 801–803; *Clark*, at p. 632; *People v. Strong, supra,* 13 Cal.5th at p. 705 [discussing the *Tison-Enmund* spectrum of culpability].)

At its core, "[r]eckless indifference to human life is 'implicit in knowingly engaging in criminal activities known to carry a grave risk of death'" (*In re Scoggins* (2020) 9 Cal.5th 667, 676, quoting *Tison, supra*, 481 U.S. at p. 157), and "encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the [appellant] does not specifically desire that death as the outcome of his actions." (*Clark, supra*, 63 Cal.4th at p. 617.)

### C. *Analysis*

Before proceeding to our *Banks/Clark* analysis, we note that appellant complains that the trial court "failed to cite one case in support of its findings besides the lead-in with *Banks* and *Clark*," thereby leaving "a third party reviewer" with no confidence that the decision was "equitable." Appellant further asserts that the trial court's decision was "just flat [*sic*] with irrelevant facts in relation to the questions posed primarily under the major participant analysis which overlapped into the reckless indifference analysis." However, on appeal we review the correctness of the lower court's decision, not its rationale. (See *Gilbert v. State of California* (1990) 218 Cal.App.3d 234, 240, fn. 4; *US Ecology, Inc. v. State of California* (2005) 129 Cal.App.4th 887, 909 ["We do not review the rationale for the court's decision. Rather, if there is substantial evidence to support the result under the correct standard, we will affirm"].)

12

We further note that the major participant and reckless indifference elements "'significantly overlap'" (*Clark, supra*, 63 Cal.4th at p. 615, quoting *Tison, supra*, 481 U.S. at p. 153), and therefore a defendant's status as a major participant in the underlying felony will "often provide significant support for . . . a [reckless indifference] finding." (*Tison*, at p. 158, fn. 12.) This is so because a defendant's "[p]roximity to the murder and the events leading up to it" may allow him to observe another participant's willingness to use lethal force and, absent the defendant's intervention (or other extenuating circumstances) suggest that he shared in his cohort's actions and mental state. (*Clark*, at p. 619; *Tison,* at p. 158.)

With these principles in mind, we proceed to our analysis.

1. *Major Participant*

Applying the factors identified by *Banks*, and viewing the totality of the circumstances, we conclude substantial evidence supported the finding that appellant was a major participant in the robbery.

Regarding the factor of planning, appellant readily acknowledges that "[t]he evidence certainly supports the finding that [appellant] participated in planning the robbery at the park and on the day of the crime." Appellant downplays his awareness of the dangers of the situation, arguing that his "preexisting knowledge of the prior *non-violent* robbery" was "crucial to [his] decision to sign up for the same type of robbery." (Italics added.) However, during the prior robbery, the perpetrators forced their way into Gurrola's home while armed with guns and tied up the occupants. Although there was no evidence appellant possessed or supplied weapons during the robbery, he admitted he saw that Sierra and Rodriguez were armed early on, before he stepped into Gurrola's van and drove it away with Gurrola and his son in the

13

back. The presence of weapons and prior use of force by his cohorts placed appellant on notice of the potential for serious violence. That appellant was present during the robbery *and* murder in this case is also significant. (Compare *Banks, supra,* 61 Cal.4th at p. 803, fn. 5 ["[i]n cases where lethal force is not part of the agreed-upon plan, absence from the scene may significantly diminish culpability for death"] with *In re Loza* (2017) 10 Cal.App.5th 38, 50 ["there may be significantly greater culpability for accomplices who are present"].)

While appellant argues that "his job was solely as the driver," the record contains substantial evidence that appellant was involved in critical decision-making throughout the robbery. For example, after appellant pulled the van over to a secluded location, and no money was found in the van, appellant came up with the idea to use Gurrola's ATM card at a nearby bank. Rodriguez testified that the men decided as a group to not let the victims go, after which appellant resumed his role as driver. Appellant admitted to police that he was one of the decision-makers in the group and that he suggested they proceed to Wells Fargo and told his cohorts "let's go." By this time, the victims had been threatened and beaten, and Gurrola had been shot in the leg to obtain his PIN.

Finally, appellant's actions after lethal force was used further demonstrate that he was not a minor participant. Appellant claims that, after the murders, he merely fled with the others, "which seems to be the normal method of operation for criminals." However, appellant did not simply flee. Rather, after the victims were killed, he came up with the idea to destroy the evidence by burning the van with the victims inside. He then helped execute that plan by driving to a gas station to get fuel and driving to a secluded underpass where the van was set on fire. Thereafter, appellant

14

and Sierra went to a Food-4-Less and tried to withdraw more money from Gurrola's account.

In sum, the record contains substantial evidence to support the conclusion that appellant was a major participant in the robbery.


2. *Reckless Indifference to Human Life*

As we observed above, there is significant overlap between being a major participant and having a reckless indifference to human life. (*Clark, supra*, 63 Cal.4th at pp. 614–615.) Applying the factors from *Clark, supra*, 63 Cal.4th 522, and considering the totality of the circumstances, we conclude the record contains sufficient evidence from which the trial court could conclude beyond a reasonable doubt that appellant acted with reckless disregard for the lives of Gurrola and his son.

Appellant was present throughout the entire commission of the robbery, had an opportunity to intervene, and did nothing to prevent the murders. (*Clark, supra*, 53 Cal.4th at p. 619 ["'[i]f the defendant fails to act as a restraining influence, then the defendant is arguably more at fault for the resulting murders'"].)

Appellant acknowledges that "[t]he evidence certainly supports the finding that [appellant] was present when the Gurrola's [*sic*] were killed and no evidence to indicate [appellant] did anything to mitigate the possibility of violence," but he argues that any evidence of his state of mind "was circumstantial." However, substantial evidence review permits reasonable inferences to be drawn from circumstantial evidence. (*People v. Sinclair* (1974) 36 Cal.App.3d 891, 898–899; see also *People v. Manibusan* (2013) 58 Cal.4th 40, 87 [noting that "'[e]vidence of a defendant's state of mind is

almost inevitably circumstantial, but circumstantial evidence is as sufficient as direct evidence to support a conviction'"].)

The extended duration of the robbery weighs heavily against appellant, as he had ample time to gain awareness of the likelihood of a violent ending for Gurrola and his son and plenty of opportunities to disengage from the unfolding chain of events. (Compare *Clark*, *supra*, 63 Cal.4th at p. 620 ["Where a victim is held at gunpoint, kidnapped, or otherwise restrained in the presence of perpetrators for prolonged periods, 'there is a greater window of opportunity for violence'"] with *People v. Ramirez* (2021) 71 Cal.App.5th 970, 989 [appellant did not have a "meaningful opportunity" to intervene in sudden and unprovoked shooting by associate standing on other side of car].) Appellant claims that because he was the driver of the van and "had to keep his eye's [*sic*] on the road," he had no opportunity to prevent the murders. However, during the robbery, appellant twice pulled over the van: the first time in a secluded area, where the men searched the van for money and then decided not to release the victims and instead to proceed to the bank; and the second time at the bank, where appellant told Morales to leave, but made no attempt to leave himself or seek aid for the victims (one of whom had been shot in his leg). (*People v. Douglas* (2020) 56 Cal.App.5th 1, 10 [defendant "displayed no interest in moderating violence or in aiding his bloody and suffering victim"].) Appellant's claim that he had no opportunity to intervene or minimize the escalating violence is therefore disingenuous, at best. (Cf. *Clark*, at pp. 619–620 [defendant was waiting across parking lot when accomplice shot victim and did not have the opportunity to intervene]; *In re Bennett* (2018) 26 Cal.App.5th 1002, 1023, 1025 [defendant "was across the street in the parking lot when the shooting took place, and there was no evidence he . . . had the opportunity to stop the shooting"]. )

16

We further point out that appellant expressed neither surprise nor remorse after the murders. Instead, he advised his cohorts to burn the evidence, including the bodies, and thereafter attempted to use Gurrola's ATM card yet again. (See *People v. Douglas, supra*, 56 Cal.App.5th at pp. 10–11 [noting that the defendant "expressed no surprise or remorse when death was the result"]; *People v. Zamudio* (2008) 43 Cal.4th 327, 357 [substantial evidence review requires courts to "presume . . . the existence of every fact the [trial court] could reasonably have deduced from the evidence"].)

In any event, even if the circumstances might also be reasonably reconciled with a contrary finding, substantial evidence review does not permit reversal on this basis. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.) Only where "'upon no hypothesis whatever is there sufficient substantial evidence to support'" the judgment is reversal warranted. (*People v. Bolin, supra*, 18 Cal.4th at p. 331.) Appellant cannot meet that standard and we must therefore affirm the trial court's denial of his resentencing petition.

**DISPOSITION**

The order denying appellant's resentencing petition is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

STONE, J.*

---

*Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

We concur:


COLLINS, Acting P. J.


CURREY, J.