Filed 7/11/23  P. v. Johnson CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B320943 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. GA030918) |
| v. | |
| LA'MIN JOHNSON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Eleanor J. Hunter, Judge.  Affirmed.

Tanya Dellaca, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

In 1999, a jury convicted appellant La'Min Johnson of numerous crimes, including one count of first degree murder, and found true special circumstance allegations that the murder was committed during the commission of a burglary. Appellant was sentenced to life imprisonment without the possibility of parole, plus 19 years.

In 2019, appellant filed a petition for resentencing under section 1172.6 (former section 1170.95),[1] which provides that persons who were convicted under theories of felony murder or murder under the natural and probable consequences doctrine, and who could no longer be convicted of murder following the enactment of Senate Bill No. 1437 (S.B. 1437), may petition the sentencing court to vacate the conviction and resentence on any remaining counts. (Stats. 2018, ch. 1015, § 1, subd. (f).)

The trial court denied the petition after an evidentiary hearing. The court found the prosecution had sustained its burden of showing beyond a reasonable doubt that appellant was liable under a still-valid theory of murder, as he was a major participant in the burglary who acted with reckless indifference to human life.

We appointed counsel to represent appellant on appeal, and after examination of the record, counsel filed an opening brief raising no issues and requesting that we follow the

---

[1]     Effective June 30, 2022, Penal Code section 1170.95 was renumbered section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10). We hereafter cite to section 1172.6 for ease of reference. Undesignated statutory references are to the Penal Code.

procedures set forth in *People v. Delgadillo* (2022) 14 Cal.5th 216 (*Delgadillo*).  Thereafter, appellant filed his own supplemental brief, in propria persona, raising several issues.  For the reasons set forth below, we affirm the trial court's order.

## BACKGROUND

### A.  Procedural Background[2]

Appellant and his codefendant, Jason Mency, were charged and tried together, with separate juries, for 88 offenses and various firearm enhancements.  (*People v. Johnson* (June 18, 2002, B137441) 2002 Cal.App.Unpub.LEXIS 5467, *2-3  [nonpub. opn.] (*Johnson*).)

On January 19, 1999, appellant's jury convicted him of multiple crimes including the attempted murder of Christopher Ramirez.  The jury found true the allegations that appellant "personally used" a handgun and that a principal was armed with a handgun in the commission of the offense.  The jury found appellant not guilty of 38 counts and was unable to reach a verdict on seven counts, including Count 1 — the special circumstance murder of Marsha Lee Birch.  (*Johnson, supra*, 2002 Cal.App.Unpub.LEXIS at p. *3.)

---

[2]  We cite to the opinion in appellant's direct appeal in summarizing the procedural history of the case, which section 1172.6, subdivision (d)(3) expressly permits.

On October 25, 1999, after retrial, appellant was found guilty of additional crimes, including the first degree murder of Marsha Birch (§ 187, subd. (a)). The jury found true the special circumstance allegation that the murder was committed while appellant was aiding and abetting the commission of a burglary (§ 190.2, subds. (a)(17), (d)), and further found true that a principal was armed with a firearm during the commission of the murder (§ 12022, subd. (a)(1).) Appellant was sentenced to a term of life without the possibility of parole, plus 19 years.

On direct appeal, appellant argued, among other things, that there was insufficient evidence to support his murder and attempted murder convictions. This court concluded otherwise and affirmed appellant's convictions in an unpublished decision. (*Johnson, supra*, 2002 Cal.App.Unpub.LEXIS at pp. *34-41, 46-50.)

On February 6, 2019, appellant filed a petition for resentencing under section 1172.6, indicating he had been convicted of first degree felony murder and alleging he could not now be convicted based on the statutory changes made by S.B. 1437. Counsel was appointed, and the trial court found a prima facie case had been made and issued an order to show cause on the petition.

On April 27, 2022, the trial court held an evidentiary hearing. At the hearing, the court allowed appellant to orally amend his petition to include the attempted murder conviction (of victim Ramirez) but found he had failed to make out a prima facie case for relief. The court pointed out

4

the jury found that appellant was the actual shooter; as such, appellant had not been convicted under (the now impermissible) natural and probable consequence theory of liability. Trial counsel for appellant did not object to the court's conclusions on this issue.

As to the felony murder conviction concerning victim Marsha Birch, the parties declined to present new evidence and, instead, made legal arguments based on the existing record of conviction, including the transcripts from appellant's two criminal trials.[3] The court took the matter under submission to issue a written decision.

On May 13, 2002, after considering argument and the evidence submitted by the parties, the resentencing court denied the petition. The court found "the [P]eople have proven beyond a reasonable doubt that petitioner was a major participant and acted with reckless indifference to human life" and he was therefore ineligible for resentencing under section 1172.6.

Appellant timely appealed.

---

[3] The trial court admitted into evidence a compact disc containing the trial and clerk's transcripts of the underlying criminal proceedings.

5

## B.   Factual Background[4]

Testimony at both trials demonstrated a close relationship between appellant and co-defendant Mency.  In our summary below, we set forth uncharged acts admitted during trial to establish the connection between appellant and Mency, as well as two crimes (of which they were both convicted) that took place prior to the Birch murder.  The trial court summarized these incidents in its written decision, as did the parties in their briefing arguments before the trial court.

### 1.   *Uncharged Acts Involving Appellant and Co-Defendant Mency*

On July 31, 1995, Pasadena police stopped a car driven by appellant, with Mency in the passenger seat.  Inside the car was a scanner set to frequencies used by the Pasadena Police Department.  Appellant and Mency had shards of glass on their clothing, and Mency had blood on his forearm, indicative of involvement in automobile burglaries where windows were broken.  Police also found stereo components, including stereo faceplates, inside the vehicle.

On January 10, 1996, Pasadena police again stopped a car driven by appellant, with Mency as a passenger.  An

---

[4]     In its written decision, the court indicated it had relied on the reporter's transcripts from both of appellant's criminal trials in rendering its decision on the section 1172.6 petition but did not consider any evidence pertaining to counts of which appellant was actually acquitted.

officer searched the car and found a police scanner, gloves, screwdrivers, a slim-jim, a black knit cap, and a radio face plate. Two weapons were also recovered, a nine-millimeter handgun and a .380 handgun.

From November 1996 through January 1997, Mency's uncle, Randolph Cunningham, lived with Mency. Cunningham saw appellant and Mency together on either a daily basis or four times a week, late at night at Mency's house. Cunningham often saw the men change into dark clothing and dark ski caps before leaving the house at night. On one occasion, Cunningham saw them return with a computer, radios, phones, a television, and a VCR.

On January 2, 1997, at around 11:00 pm or 12:00 a.m. (a few hours before Birch's murder, see *post*), Cunningham saw appellant and Mency leave the home wearing dark clothing, dark caps, backpacks, and gloves.

### 2. *Conviction for Crimes Occurring Prior to Birch Murder*

At appellant's first trial, appellant and Mency were convicted of charges arising out of the following two incidents that predated the Birch murder.

#### a. *Polwrek Home Invasion (Counts 51-59)*

On September 18, 1996, John Polwrek was asleep in his Pasadena home when he was awakened by two armed, male intruders wearing dark clothing, masks, and gloves.

The men told Polwrek they had disabled the home alarm and cut the phone lines.

The men used duct tape to tie Polwrek's hands and legs. His wife and young children, who were sleeping in another room, were similarly tied up. When Polwrek told the assailants to leave his son alone, he was struck on the head with a gun, causing blood to run down his head. The house was ransacked after multiple threats and demands for money. The men stole money, a television, a VCR, a computer, and a satellite TV control box. The men also stole the family van. The van was recovered a few hours later in Altadena. The satellite TV control box was recovered from appellant's parents' home on January 3, 1997.

A jury found that appellant and Mency were the two men who committed the home invasion, and both were convicted of multiple counts arising out of the incident. The jury further found true that Mency personally used a firearm during the home invasion, but not true that appellant personally used a firearm during the incident.

b.  *Attempted Murder of Christopher Ramirez (Counts 22-27)*

On December 22, 1996, Christopher Ramirez was sitting with friends in his Suburban SUV outside of his house when he noticed two men walking towards his mother's van that was parked in the driveway. Ramirez and his friends exited the SUV, and Ramirez asked the men

what they were doing.[5]  One man, the shorter of the two, cocked a nine-millimeter handgun by pulling back the slide and pointed it in the air.  Ramirez ran, and the shorter man ran after him and shot him in the back of his upper right leg as he attempted to hop over a fence.  Ramirez saw the man trying to work his weapon, but the gun appeared jammed.

As Ramirez was being chased, the other man approached the rest of the group and ordered them back into their SUV, with his weapon pointed at them.  The group got back into the SUV, and the man broke the driver's side window with his gun and got into the driver's seat.  The shorter man returned and climbed into the passenger seat.  The men asked "where are the keys.  Where are the fucking keys?"  One of the victims, Michael Bushmeyer (who was intoxicated) responded, "They're right there, fool."  One of the men responded, "[d]on't call me a fool," and the shorter man, who was in the passenger seat, pulled Bushmeyer out of the SUV and threw him on the ground.  While Bushmeyer was rolled into a fetal position, the shorter man held his gun near Bushmeyer's head saying, "Don't call me a fool," as Bushmeyer responded, "I'm sorry.  I'm sorry."  Thereafter, a car came down the street and the suspects ran.

In January 1997, one of the victims, Bernard Krell, reported that appellant was the person who chased Ramirez

---

[5]      When Ramirez saw the men, they had masks on their faces; however, two victims saw the men before they rolled down their masks (see fn., 7, *post*).

on December 22nd, after Krell saw a news article about appellant and Mency's arrest for a series of crimes that included their photos. At trial, Krell identified appellant as the person who chased Ramirez and as the person who stood over Bushmeyer with a gun.[6] Mency later admitted he was involved in the Ramirez incident.[7]

Appellant and Mency were charged with the attempted murder of Ramirez, as well as additional counts of vehicular burglary, attempted carjacking, and false imprisonment arising out of this incident. Both men were convicted of all charges, with the exception of a false imprisonment count regarding victim Pedro Diaz, who testified he ran from the scene early during the incident. The jury further found true

---

[6] On the night of the shooting, police arrested a man named Leon Ladmirault near the scene. Krell and Diaz identified Ladmirault as a suspect. At Ladmirault's trial, Krell identified Ladmirault as the person who smashed the car windshield and got into the driver's seat while Ramirez was being chased by the other man. Consistent with Krell, Diaz testified that Ladmirault was one of the two men he saw in the driveway before Diaz ran from the scene, but not the person who cocked his gun and chased Ramirez. The parties stipulated Ladmirault was convicted of attempted murder, attempted carjacking, assault with a firearm, and false imprisonment related to the December 22, 1996, incident. However, it was further stipulated that Ladmirault was not accused of actually firing a gun, and Ladmirault was tested for GSR and received negative results.

[7] In addition to the two men initially spotted walking towards Ramirez's mother's van, there was a third suspect involved in the Ramirez incident. Two of the victims (Diaz and Bushmeyer) testified there was a third person across the street, or in the background, acting as a lookout during the incident.

10

that appellant personally used a firearm during the offenses but found *not true* that Mency personally used a firearm during any of the offenses.

### 3. *Murder of Marsha Birch (Count 1, Second Trial)*

#### a. *The Shooting*

On January 3, 1997, Marsha Birch left for work at around 5:00 a.m. As she went to her car, she was shot in the front right shoulder and through the neck, which ultimately caused her death. Her husband heard two shots and ran outside and found his wife laying on the sidewalk. Police found two expended casings and one expended bullet near Birch's body. Police also recovered a bullet from Birch's clothing while she was at the hospital.

When police arrived, they noticed there was damage to a blue Honda parked across the street from where Birch was shot, as the rear passenger window had been broken and items were scattered inside the vehicle as if it had been ransacked and burglarized. Alfred Robinson, who lived across the street from the Birch family and was the owner of the blue Honda, had parked and locked his vehicle the previous night, with the window intact. Missing from the car were a small briefcase, a nine-millimeter Beretta handgun, an earthquake kit, and a flashlight. The earthquake kit and small briefcase were found in the bushes near the driveway at the Birch home.

11

### b.  *Police Arrest Appellant and Co-defendant Mency*

On January 3, 1997, the same morning Birch was murdered, police were conducting an undercover surveillance of Mency's home located on Olive Street in Monrovia.  At 5:14 a.m., two men were seen running toward Mency's home.  One was taller than the other, and each had dark clothing.  The two men went into the home and five minutes later came back out and walked up the street.

At 5:19 a.m., the men were seen at a nearby trash can where one man held the lid while the other leaned inside.  A surveillance officer immediately looked into the trash can and found Birch's purse and identification.  The purse had a broken strap.

The two men went back to Mency's home.  The taller of the two men was identified as Mency.  Several minutes later, they reemerged from the home, and the shorter of the two men got into a gold Hyundai and drove up the street and into a gas station.  Police followed the man into the gas station at approximately 5:30 a.m. and subsequently arrested him.  The man was identified as appellant.

Inside appellant's vehicle, police observed a handheld scanner on the right front passenger seat, two bolt cutters, and a pair of gloves.  The handheld scanner was marked, "Property of Jason Mency."  Appellant's hands were bagged for gunshot residue (GSR) testing.

Police arrested Mency at approximately 6:30 a.m. At the time of his arrest, Mency was carrying a police scanner and wore an earplug.

### c.    *Investigation*

Police found a swamp cooler at Mency's house that contained three handguns:  a .45 caliber handgun with a loaded magazine and two nine-millimeter Beretta handguns with loaded magazines.  One of the nine-millimeter Beretta handguns was identified as the gun that was taken from Robinson's vehicle earlier that morning.[8]

A firearms expert determined the expended bullet recovered from Birch at the hospital and the bullet found near her body were fired from the .45 caliber handgun recovered from the swamp cooler.  The two shell casings found at the crime scene may have been fired from that same gun, but the expert could not say for sure.

After his arrest, Mency also had paper bags placed over his hands.  The GSR test for Mency reflected one particle unique to gunshot residue and three particles consistent with gunshot residue.  The GSR test for appellant showed two particles unique to gunshot primer residue, four particles consistent with gunshot residue, and three particles of spherical lead, which a criminalist opined could only have come from firing a gun, handling a gun with the

_____

[8]    The other nine-millimeter firearm was found to have fired a bullet and a casing found at the Ramirez crime scene.

particles already on it, or having been in very close proximity (i.e., less than three 3 feet) when the gun was fired.

### d. *Jury Verdicts and Findings Regarding Appellant and Co-Defendant Jason Mency*

At appellant's first trial, in which he was jointly tried with Mency, the jury was unable to reach a verdict with regard to appellant but found Mency guilty of all counts charged in relation to the Birch murder: (1) first degree murder of Marsha Birch, with a finding that a principal was armed during the offense (Count 1), with true special circumstance findings that the murder was committed during the commission of a burglary *and* that it was committed during the commission of a robbery; (2) robbery of Marsha Birch (count 2); (3) vehicular burglary of Alfred Robinson's vehicle (count 3); and (4) grand theft of the firearm belonging to Robinson (count 4). Mency was also found guilty of the crime of armed criminal action (count 11), meaning the jury found that on January 3, 1997, Mency was armed with a loaded firearm and harbored the intent to commit a felony (specifically, either robbery or burglary) (count 11).

After retrial, appellant was convicted of the first degree murder of Marsha Birch, and the jury found true the allegation that a principal was armed during the offense. The jury also found true the special circumstance allegation that the murder was committed during the commission of a

14

burglary, but found *not true* the special circumstance allegation that the murder was committed during the commission of a robbery. The jury further convicted appellant of the vehicular burglary (count 3) and grand theft firearm (count 4), but was unable to reach a verdict on count 2, the robbery of Birch. Finally, the jury found appellant guilty of armed criminal action (previously count 11, renumbered as count 5), which, as indicated above, means the jury found appellant was armed with a loaded firearm on the day of the Birch murder, with the intent to commit a felony (robbery or burglary).

## DISCUSSION

### A.  *Delgadillo* Review

Because the instant appeal is from an order denying postconviction relief rather than a first appeal of right from a criminal conviction, defendant is not entitled to our independent review of the record pursuant to *People v. Wende* (1979) 25 Cal.3d 436. (*Delgadillo, supra*, 14 Cal.5th at pp. 221-222; *People v. Serrano* (2012) 211 Cal.App.4th 496, 503 (*Serrano*)). He is, however, entitled to appellate consideration of the contentions raised in his supplemental brief. (See *Delgadillo, supra*, at p. 221; *Serrano, supra*, at p. 503.)

In his supplemental brief, appellant argues the trial court erred in denying his section 1172.6 petition because there was insufficient evidence to support the finding he was a major participant with reckless indifference during the

15

Birch murder.  Appellant also renews several claims previously rejected by this court on direct appeal.  For the reasons explained below, we discern no cognizable or reversible error.

## B.    Section 1172.6 and the Petitioning Procedure

Senate Bill No. 1437, which took effect on January 1, 2019, limited accomplice liability under the felony-murder rule and eliminated the natural and probable consequences doctrine as it relates to murder to ensure that a person's sentence is commensurate with his or her individual criminal culpability.  (*People v. Gentile* (2020) 10 Cal.5th 830, 842-843 (*Gentile*); see also *People v. Lewis* (2021) 11 Cal.5th 952, 957, 971 (*Lewis*).)  To that end, and as relevant here, Senate Bill No. 1437 amended the felony-murder rule by adding section 189, subdivision (e), which now provides that a participant in the perpetration of qualifying felonies is liable for felony murder only if the person: (1) was the actual killer; (2) was not the actual killer but, with the intent to kill, acted as a direct aider and abettor; or (3) was a major participant in the underlying felony and acted with reckless indifference to human life, as described in section 190.2, subdivision (d).  (*Gentile, supra*, at p. 842.)

Senate Bill No. 1437 also added section 1170.95 (now section 1172.6), which created a procedure whereby persons convicted of murder under a now-invalid felony-murder (or natural and probable consequences) theory may petition to vacate their convictions and for resentencing.  Where, as

16

here, the petitioner has made a prima facie showing of entitlement to relief, the trial court must issue an order to show cause and then hold a hearing to determine whether to vacate the murder conviction and recall the sentence. (§ 1172.6, subd. (d)(3); (*Lewis*, *supra*, 11 Cal.5th at p. 960.) In making that determination, the prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence.  (§ 1172.6, subd. (d)(3); *Lewis*, at p. 960.) At the subdivision (d) hearing, the prosecution has the burden to prove the petitioner's ineligibility beyond a reasonable doubt.  (§ 1170.95, subd. (d)(3).)

In 2021, the Senate amended section 1172.6 to make clear that defendants convicted of attempted murder under the natural and probable consequences doctrine or manslaughter are also entitled to seek resentencing relief. (Sen. Bill No. 775 (2021–2022 Reg. Sess.); Stats. 2021, ch. 551, §§ 1–2, eff. Jan. 1, 2022.)

C.   **Sufficiency of Evidence to Support Denial of Resentencing for Birch Murder**

Appellant contends there was insufficient evidence to support the trial court's denial of his section 1172.6 petition regarding the Birch murder.  We disagree.

1.   *Standard of Review*

The trial court's decision to deny a section 1172.6 petition following an evidentiary hearing will be affirmed if supported by substantial evidence.  (*People v. Clements*

17

(2022) 75 Cal.App.5th 276, 298; *People v. Williams* (2020) 57 Cal.App.5th 652, 663-664.)  Under that familiar standard, "we review the record 'in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.'"  (*People v. Westerfield* (2019) 6 Cal.5th 632, 713.)

2.     *The Banks and Clark Factors*

In *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (Cark), the California Supreme Court set forth the factors relevant to determine whether a defendant is a major participant in a felony who acted with reckless indifference to life.

The *Banks* factors, pertaining to major participant status, include the role the defendant had in planning the criminal enterprise leading to one or more deaths, his role in supplying or using lethal weapons, his awareness of the dangers posed by the nature of the crime (the weapons used or the past experience of the other participants), whether he was present at the scene of the killing, whether his actions or inactions played a particular role in the death, and what he did after lethal force was used.  (*Banks*, *supra,* 61 Cal.4th at p. 803.)

The *Clark* factors, describing reckless indifference, include the defendant's knowledge of weapons used in the crime, how those weapons were used, the number of weapons

18

used, the defendant's proximity to the crime, his opportunity to stop the killing or aid the victim[s], the duration of the crime, the defendant's knowledge of the killer's propensity to kill, and the defendant's efforts, if any, to minimize the possibility of violence during the crime. (*Clark*, *supra*, 63 Cal.4th at pp. 616-623.)

No single factor is determinative—or even necessary. (*Banks*, *supra,* 61 Cal.4th at p. 803; *Clark*, *supra*, 63 Cal.4th at pp. 618, 621-623). Instead, courts are to assess the totality of a defendant's culpability within the "spectrum" established by two United States Supreme Court cases: on one end, *Enmund v. Florida* (1982) 458 U.S. 782, in which defendant was the classic getaway driver for an armed robbery, and on the other, *Tison v. Arizona* (1987) 481 U.S. 137 (*Tison*), in which defendants helped convicted murderers escape from prison, providing weapons, and stood by as their confederates debated killing, then killed, an innocent family of four. (*Banks*, *supra,* at pp. 801-803; *Clark*, *supra,* at pp. 632; *People v. Strong* (2022) 13 Cal.5th 698, 705 [discussing the *Tison-Edmund* spectrum of culpability].)

At its core, "[r]eckless indifference to human life is 'implicit in knowingly engaging in criminal activities known to carry a grave risk of death'" (*In re Scoggins* (2020) 9 Cal.5th 667, 676, quoting *Tison*, *supra*, 481 U.S. at p. 157), and "encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the [appellant] does not specifically desire that death as the outcome of his actions." (*Clark, supra*, 63 Cal.4th at p. 617.)

19

3.    *Analysis*

    a.    *Major Participant*

In his evidentiary brief below, appellant argued that "the evidence shows [appellant] was not present at the scene of the murder on January 3, 1997." Appellant's primary support for this assertion was a written declaration, signed by Mency in 2003, stating that a man named Sidney Robinson, and not appellant, committed the vehicular burglary with him and that Robinson murdered Birch. Appellant secondarily pointed to trial evidence indicating that around the time Mency was arrested, Robinson was arrested down the street from Mency's house and sought to flee from police.

Other than claiming that Robinson, not he, committed the burglary with Mency, appellant provided no other argument on the "major participant" requirement and instead conceded that if appellant was with Mency, then "there is no issue [appellant] was a major participant" and that the "front and center issue is whether [appellant] acted in reckless indifference to human life."

At the evidentiary hearing on appellant's section 1172.6 petition, counsel informed the court he was withdrawing Mency's declaration from consideration and would solely rely on the evidence presented at trial.[9]  In light

---

[9]    In his appeal, appellant does not refer to the declaration in his supplemental brief either.

of the trial evidence and the jury's findings that appellant committed the burglary with Mency, the court reasonably found that appellant was a major participant in the underlying vehicular burglary that formed the basis for appellant's murder conviction. (*People v. Williams* (2020) 57 Cal.App.5th 652, 559-664 [a resentencing hearing under section 1170.95 is not a trial de novo]; see also *People v. Farfan* (2021) 71 Cal.App.5th 942, 947 [section 1172.6 petition does not afford litigants retrial on issues already previously determined by jury under settled law]; cf. *People v. Zamudio* (2008) 43 Cal.4th 327, 357 [noting that conflicts in evidence subject to "justifiable suspicion" do not justify the reversal of a judgment as it is for the trier of fact to determine the truth or falsity of facts upon which a determination depends].)

### 2. *Reckless Indifference to Human Life*

Applying the factors from *Clark*, *supra*, 63 Cal.4th at p. 522, and considering the totality of the circumstances, we conclude the record demonstrates petitioner acted with reckless disregard for human life.

First, the major participant and reckless indifference elements "'significantly overlap'" (*Clark, supra*, 63 Cal.4th at p. 615, quoting *Tison*, *supra*, 481 U.S. at p. 153), and therefore a defendant's status as a major participant in the underlying felony will "often provide significant support for [] a [reckless indifference] finding." (*Tison, supra*, at p. 158, fn. 12.) This is so because a defendant's "[p]roximity to the

21

murder and the events leading up to it" may allow him to observe another participant's willingness to use lethal force and, absent the defendant's intervention, suggest that he shared in his cohort's actions and mental state. (*Clark, supra,* at p. 619; *Tison, supra*, at p. 158.)

Second, substantial evidence review permits reasonable inferences to be drawn from circumstantial evidence. (*People v. Sinclair* (1974) 36 Cal.App.3d 891, 898-899; see also *People v. Manibusan* (2013) 58 Cal.4th 40, 87 [noting that "'[e]vidence of a defendant's state of mind is almost inevitably circumstantial, but circumstantial evidence is as sufficient as direct evidence to support a conviction'"].)

Here, appellant and Mency were involved in multiple theft related offenses in which they employed violence. In September 1996, appellant and Mency invaded the Polwrek residence, and Mency used his firearm to strike John Polwrek, causing him to bleed. Appellant did not stop or deter Mency from engaging in that type of violent conduct, but instead continued with the burglary and helped tie up Polwrek's wife and children, including their six-year-old son. In late December 1996 (and only two weeks before Birch's murder), appellant fired a weapon at Christopher Ramirez and most likely would have continued to fire at Ramirez, but for his gun jamming. Thereafter, appellant threatened Michael Bushmeyer, holding the gun near his head.

On the day of Birch's murder, January 2, 1997, appellant (as the jury found) was armed with a loaded

firearm, with the intent to commit a felony. The evidence further indicates that appellant, if not the actual shooter, was at the very least within three feet from the shooting and did nothing to stop the murder or aid the victim after she had been shot. Instead, appellant immediately left with Mency (as he was not present when Birch's husband came out of the home), and both men were seen returning to Mency's house minutes after the murder and disposing of evidence. (*People v. Williams, supra*, 57 Cal.App.5th at p. 664 [upholding denial of resentencing petition where evidence showed that even if appellant was not the shooter, he handled the gun before or after the murder and did nothing to render aid to victim or call for assistance]; see also *People v. Douglas* (2020) 56 Cal.App.5th 1, 10 [defendant "displayed no interest in moderating violence or in aiding his bloody and suffering victim" and "expressed no surprise or remorse when death was the result"].)

As the trial court reasonably found, the confrontation with Birch, her broken purse strap, and firing of multiple shots, are all consistent with the behavior of both appellant and Mency during prior burglaries or attempted burglaries, wherein one or the other used weapons when confronted or resisted by victims. (*People v. Zamudio, supra*, 43 Cal.4th at pp. 357-358 [substantial evidence review requires courts to "presume . . . the existence of every fact the [trial court] could reasonably have deduced from the evidence"].)

Even if the circumstances might also be reasonably reconciled with a contrary finding, substantial evidence

23

review does not permit reversal. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.) Only where "'upon no hypothesis whatever is there sufficient substantial evidence to support'" the judgment is reversal warranted. (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) Appellant cannot meet that standard, and we must therefore affirm the trial court's denial of his resentencing petition.

## D.   Other Claims

In his supplemental brief, appellant renews several claims we rejected in his direct appeal: (1) the jury was unduly prejudiced by the admission of three uncharged prior detentions (*Johnson*, *supra*, 2002 Cal.App.Unpub.LEXIS at pp. *4-11); (2) the trial court erroneously excluded impeachment evidence proffered in relation to witness Randolph Cunningham  (*id.* at pp. *15-20); (3) there was insufficient evidence to support his convictions in "counts 51-59, the Polwrek crimes"  (*id.* at pp. *50-52); and (4) there was insufficient evidence to support his convictions in "counts 22 through 27 involving Christopher Ramirez & friends"  (*Id.* at pp. * 45-50).  Appellant's challenges directed at his original trial, however, are not cognizable in this section 1172.6 appeal.  (See *People v. Farfan*, *supra*, 71 Cal.App.5th at p. 947 ["The mere filing of a [prior Penal Code] section 1170.95 petition does not afford the petitioner a new opportunity to raise claims of trial error or attack the sufficiency of the evidence supporting the jury's findings"].)

24

In addition to having considered the issues raised in appellant's supplemental brief, we have also independently examined the entire record and found no arguable issues in this section 1172.6 appeal.[10]  (*Smith v. Robbins* (2000) 528 U.S. 259, 278-279; *Delgadillo*, *supra,* 14 Cal.5th at pp. 232-233.)

---

[10]     Because the notice provided to defendant in this case was "suboptimal" under *Delgadillo*, we exercised our discretion to independently review the record.  (*Delgadillo*, *supra*, 14 Cal.5th at pp. 232-233.)

## DISPOSITION

The order denying appellant's resentencing petition is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

MORI, J.

We concur:

CURREY, P. J.

ZUKIN, J.